**In re Leonard BLUMAN, Debtor.**

**Bankruptcy No. 189–91431–260.**

United States Bankruptcy Court, E.D. New York.

April 2, 1991.

Jaspan, Ginsberg, Ehrlich, Schlesinger, Silverman & Hoffman—Attorneys for Trustee by Kenneth P. Silverman, Gary

F. Herbst, Janet F. Brunell, Garden City, N.Y., Steinberg & Associates—Attorneys for Trustee by Herbert N. Steinberg, Forest Hills, N.Y., for trustee.

Jerry Chrisafis, Long Island City, N.Y., for debtor.

## DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

The debtor in this Chapter 7 case, Leonard Bluman (the "Debtor" or "Seller") moves for an order of this Court directing the trustee to abandon a certain contract of sale (the "Purchase Agreement," "Agreement," "Contract") and restraining the trustee from transferring or distributing any of the funds collected as a result of that Agreement. The Debtor argues that the Purchase Agreement is an executory contract which the trustee failed to affirmatively assume and consequently it should be deemed rejected in accordance with § 365(d)(1).[1] He further contends that pursuant to § 541(a)(6)[2] the trustee should release the funds collected as a result of the Agreement as they are monies earned by the Debtor after the commencement of the case and as such are not part of the estate. For the reasons set forth below, the Debtor's motion is denied.

## FACTS

On December 10, 1984 (the "Transfer Date") the Debtor entered into a Contract to sell his insurance business to Petrocelli & Presti, Inc. ("P & P" or the "Buyer"). Reduced to its simplest terms, the Contract provides for the sale by the Debtor of all the intangible assets of his insurance business including customer lists, files and customer account records used by him in connection with the operation of the business and all claims files. It further provides for the right to use the name Leonard Bluman, Raymond Snitow Associates, or any variation thereof, together with all the goodwill of the business. The Contract also includes a covenant by the Seller not to compete; it restricts the Debtor from competing with the Buyer within a twenty-five mile radius of the Buyer's agency for a period of five years following the date of final payment. The term "final payment" is not defined in the Contract. The Debtor also agreed that for a period of one year following the Transfer Date of the Contract, December 10, 1984, he would cooperate with the Buyer and perform certain services which would permit the Buyer to retain as many accounts as possible.

In consideration for all the assets of the business and the restrictive covenant, the Buyer agreed to pay to the Seller a sum each month equal to: (1) forty-five percent of the gross commissions received during the previous month, commencing January 15, 1985, the last payment coming due on December 15, 1985 (Gross commissions are understood to mean all commissions received on policies, amendments and endorsements, including new accounts); and thereafter, (2) twenty-five percent of the gross commissions received during the previous month, commencing January 15, 1986, to be paid to the seller for his lifetime but in no event for less than ten years. All monthly payments were to include interest at the rate of 10% per annum. 15% of the payments were allocated to goodwill, 25% to the covenant not to compete and 60% to expirations.

The Buyer also agreed to segregate the accounts received from the Seller, service the accounts in the same way as accounts

---

**1.** Section 365(d)(1) of the Bankruptcy Code states in pertinent part:
In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract ... within 60 days after the order for relief ... then such contract or lease is deemed rejected.

**2.** Section 541(a)(6) states in pertinent part:
The commencement of a case section 301, 302, or 303 of this title creates an estate.

Such estate is comprised of all the following property, wherever located and by whomever held:

\* \* \* \*

(6) Proceeds, product, offspring, rents, and or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

generated by the Buyer, and use its best efforts to renew, market and service the accounts acquired from the Seller.

The Contract provides that in lieu of making monthly payments the Buyer has the right to satisfy the obligation to the Seller, any time after the second twelve month period following the Transfer Date of the Contract by paying to the Seller, in cash, an amount determined by the use of a formula stated in the Contract. To date this option has not been exercised and the Buyer continues to make monthly payments as per the terms of the Contract.

The Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code on May 3, 1989. On May 17, 1989, a trustee was duly appointed to administer the liquidation of this estate. The trustee, determined that the monthly payments being made were proceeds of the sale of an asset of the Debtor and as such were property of the estate. Hence, pursuant to arrangements with the Buyer, he began collecting the monthly payments. Presently the trustee is holding approximately $16,364.83 in escrow, pending the determination of this matter.

Thereafter, the Debtor made the instant motion for an order of this Court directing the trustee to abandon the Purchase Agreement as a result of the failure of the trustee to assume it, and restraining him from transferring or distributing any of the monies collected pursuant to the Contract.

### DISCUSSION

The Debtor contends that the Contract is an executory contract which the trustee was required to assume or reject within 60 days after the entry of the order for relief and since the trustee took no affirmative steps to assume the Contract within the 60 day period, it should be deemed rejected. *See* § 365(d)(1). The Debtor further maintains that since the Contract has been rejected, the proceeds of that Contract are not part of the estate and the trustee should release to the Debtor the proceeds held in escrow.

The Debtor's second argument is that the trustee be enjoined from distributing the funds collected pursuant to the Contract as well as from continuing to collect the proceeds of the Contract because the proceeds are earnings from services performed by an individual debtor after the commencement of the case and as such are not property of the estate. *See* § 541(a)(6).

The trustee argues that the Agreement is not an executory contract and as such did not require him to assume or reject it. He also claims that the proceeds are property of the estate.

### A. The Agreement Is Not An Executory Contract.

█ The Debtor argues that the Purchase Agreement is executory because both parties to the Contract have outstanding material obligations. This Court recognizes that at this time P & P is required to remit, each month, to the Debtor, a portion of the commissions received on the accounts acquired from the Debtor. Additionally P & P has an obligation to segregate and service accounts it acquired from the Debtor. The Debtor is presently obligated to comply with a covenant not to compete. At one time the Debtor was obligated to cooperate with the Buyer and perform certain tasks which would enhance the Buyer's ability to retain the accounts sold to the Buyer. The Debtor was only required to cooperate for a period of one year following the Transfer Date. That period of time expired on December 10, 1985, hence the Debtor is no longer required to perform that obligation.

The term "executory contract" is not defined in the Code. The legislative history of § 365 states that the term executory contracts "generally includes contracts on which performance remains due to some extent on both sides." H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978), U.S. Code Cong. & Admin News 1978, pp. 5787, 5844, 6303. The problem with the above stated definition is if it is to be stretched, it becomes evident that all contracts could be considered executory. *In re Leibinger–*

*Roberts, Inc.,* 105 B.R. 208, 211 (Bankr.E. D.N.Y.1989). Therefore the mere fact that there are obligations on both sides of the contract yet to be performed—P & P is required to make payments and the Debtor is required not to compete—does not persuade this Court that this Contract is executory for purposes of § 365.

Courts have repeatedly utilized the definition formulated by Professor Vern Countryman, the respected authority on contracts and bankruptcy law. *In re Leibinger–Roberts, Inc.,* 105 B.R. at 211; *See e.g., In re Meehan,* 59 B.R. 380 (E.D.N.Y.1986); *In re Aetna Casualty & Surety Co. v. Gamel,* 45 B.R. 345 (N.D.N.Y.1984); *In re Chateaugay Corp.,* 102 B.R. 335 (S.D.N.Y. 1989). Countryman defines an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L. Rev. 439, 460 (1973). The Countryman definition clearly requires that material future performance obligations remain on both sides of a contract in order for the contract to be executory under § 365 of the Code. *In re Chateaugay Corp.,* 102 B.R. at 345.

The Debtor argues that there are indeed material future performance obligations on both sides of the contract because P & P is obligated to pay the monthly installment payments to the Debtor and the Debtor is obligated to honor the terms of the covenant not to compete and therefore this contract is executory under Countryman's definition.

It is undisputed that P & P still owes material performance. If P & P defaulted on its obligation to make payments to the Debtor, that would be a material default and such breach would excuse the performance of the Debtor.

The Debtor maintains the restrictive covenant is a material obligation because if he does not honor the noncompetition clause it would be a material breach justifying the Buyer to withhold payment.

If the Debtor breached the covenant not to compete, the Buyer, at most, might be entitled to injunctive relief or an award of damages. "The damages recoverable for the breach of a covenant, in connection with a sale, not to engage in business in competition with the buyer, are limited strictly to losses which the buyer sustains. The damages may include loss of profits and diminution in value of the property purchased." *Present v. Glazer,* 225 A.D. 23, 232 N.Y.S. 63 (N.Y.App.Div. 4th Dept. 1928). The Contract sets forth the remedies available to the Buyer if the Seller breaches the covenant not to compete. The Contract states:

> In the event of a breach or threatened breach by the seller or its principal(s), of the provisions of [the covenant not to compete, it] may be enforced by an injunction restraining the seller from the commission of such breach to the full extent hereof, or to such extent as a court of competent jurisdiction may deem just and proper for the reasonable protection of the rights and interests of the buyer. Nothing contained herein shall be construed as prohibiting the buyer from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of money damages.

From the above language it is apparent that the parties intended that a breach of the covenant not to compete would entitle the Buyer to injunctive relief or money damages. It is notable that the parties did not state that a breach of the covenant not to compete would be deemed a material breach of the contract relieving the Buyer of its obligations. Even if such a provision were included, it is doubtful it would be enforced as it would probably result in a forfeiture.

Since the future obligations of the Debtor do not rise to the level of material future performance, it is this Courts conclusion, using the Countryman test, that the Contract is not an executory contract for the purposes of § 365 of the Bankruptcy Code.

The Sixth Circuit in *In re Jolly,* 574 F.2d 349, 351 (6th Cir.), *cert. denied,* 439 U.S.

929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978) formulated what is now termed the functional approach to determine whether or not a contract should be deemed executory. "In applying the functional approach, it is necessary to work backward, proceeding from an examination of the goals rejection is expected to accomplish.... If those purposes have already been accomplished or if they cannot be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Code." *In re Government Securities Corp.*, 101 B.R. 343, 349 (Bankr.S.D.Fla. 1989), *aff'd*, 111 B.R. 1007 (S.D.Fla.1990) (citing *In re Jolly); See In re Taylor*, 91 B.R. 302, 311 (Bankr.D.N.J.1988), *aff'd*, 103 B.R. 511 (D.N.J.1989), *appeal dismissed*, 913 F.2d 102 (3rd Cir.1990). "Those purposes include: (1) taking advantage of contracts which will benefit the estate; (2) relieving the estate of burdensome contracts; (3) promoting the debtor's fresh start; (4) permitting the allowance and determination of claims; and (5) preventing parties from remaining 'in doubt concerning their status vis-a vis the estate.' " *In re Monument Record Corp.*, 61 B.R. 866, 868 (Bankr.M.D.Tenn.1986) (citations omitted).

When one applies the functional approach, the facts of this case clearly support the conclusion that the contract should not be deemed to be an executory contract as of the date of the filing of the petition in bankruptcy. Rejection of this contract will accomplish none of the goals rejection is expected to accomplish. Rejection will not allow the Debtor to take advantage of contracts which will benefit the estate nor relieve the estate of burdensome obligations. Rejection will not impact the allowance and determination of claims nor clarify the status of parties vis-a-vis the estate. It is true that rejection would promote and enhance the Debtor's fresh start since the proceeds of this Contract would be delivered to the Debtor in the event of rejection. However, this boon to the Debtor should not come at the expense of creditors.

Moreover, considering the facts and circumstances of this particular case it becomes even more apparent that the Contract is no longer executory. It is one for the sale of a business. Its primary objective was accomplished when the Debtor turned over title to the assets. Although the Debtor is currently obligated to abide by the terms of a covenant not to compete, the restrictive covenant is ancillary to the bargained-for agreement to convey the business. It is this Court's observation that the Debtor does not claim that abiding by the covenant not to compete in and of itself will hamper his fresh start or inhibit his ability to make a living. The only reason the Debtor wants this Contract rejected is so that the proceeds will flow to him instead of being used to pay creditors. The concept of the " 'executory contract' in bankruptcy should be defined in the light of the purpose for which the trustee is given the option to assume or reject. Similar to his general power to abandon or accept other property, this is an option to be exercised when it will benefit the estate. *A fortiori*, it should not extend to situations where the only effect of its exercise would be to prejudice other creditors of the estate." Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L. Rev. 439, 450 (1973).

The Debtor relies on the case of *In re Noco, Inc.*, 76 B.R. 839 (Bankr.N.D.Fla. 1987) to support the proposition that the contract at issue is an executory contract. However *Noco*, held that the debtor was not free to reject a covenant not to compete contained in a franchise agreement where the only obligation left was the performance of the covenant not to compete. As the covenant not to compete was the one remaining obligation to be performed, the Court refused to deem the contract executory.

The Debtor also relies on *In re Norquist*, 43 B.R. 224 (Bankr.E.D.Wash.1984) to support the proposition that the Purchase Agreement is executory. In that case, the debtor, a physician, entered into a partnership agreement with a certain medical clinic. The agreement provided that should the debtor leave the clinic for whatever

reason, he would not practice medicine in the area for a period of two years. Prior to filing his petition for relief, the debtor left the clinic. The Court found that the contract was executory for two reasons. First, although the clinic did tender all amounts due to the debtor immediately upon notice of the rejection of the contract, at the time of the filing of the petition for relief, the clinic had yet to pay the debtor for accrued vacation time and his interest in the partnership. Furthermore, the Court held the partnership agreement was executory because the partnership had an absolute obligation to render an accounting to the debtor, and a refusal by the Clinic to meet that obligation would constitute a material breach excusing further performance under the covenant not to compete. Importantly, the *Norquist* court premised its decision on the fact that the covenant not to compete was an onerous burden on the debtor which would inhibit his ability to pay his debts. Enforcement of the restrictive covenant would have forced the debtor to seek employment in another area, sell his residence, and relocate his family. In the instant case, the Contract is not a burden on the estate. To the contrary, the trustee has already collected $16,364.83 of the proceeds of this contract for the estate. Nor is the covenant not to compete itself a burden on the Debtor Unlike *Norquist,* the Debtor in this instance has no interest in avoiding the covenant not to compete. Rather, as has already been noted, the Debtor wants this Contract to be rejected so that the proceeds of the sale will flow directly to him instead of the estate.

In *In re The Record Company,* 8 B.R. 57 (Bankr.S.D.Ind.1980) the Court applied the Countryman test to a contract for the sale of a business where the Debtor was the buyer, not the seller as in this case, and determined the contract was executory. The Contract provided for the Record Company to purchase all of the assets and inventory of an entity known as Bummbusiness. Five months later the Record Company filed for relief under Chapter 11. At the time of filing, it had paid part of the purchase price and was obligated to pay an installment payment of $10,000 and assume

Bummbusiness' debts which totaled $380,-000. The seller Bummbusiness was obligated to honor a covenant not to compete with The Record Company for two years within a fifty mile radius, use best efforts to obtain extensions of due dates for trade debt, grant access to Bummbusiness's corporate records; and provide The Record Company with an itemized bill of sale. Bummbusiness was also obligated to obtain the landlord's consent to assign the retail store leases.

Although in *The Record Company,* the debtor was the purchaser, the case is similar to the case at bar in that in both cases the contract at issue was one for the sale of a business, the purchaser was obligated to pay the remaining purchase price, and the seller was obligated to comply with a covenant not to compete.

In holding that the contract was executory, the Court in *The Record Company,* stated that the purchaser/debtor's obligation to pay, standing alone, would not render the contract executory. When viewed in conjunction with the performance of the seller still outstanding, the contract would be deemed executory. Specifically, the Court stated that the requirement of the seller to obtain the landlord's consent to assign the leases would "be a critical element of [its] performance." *The Record Company,* 8 B.R. at 59. It is interesting to note that the Court in *The Record Company* did not single out the purchaser's obligation under the covenant not to compete as a critical element of performance, but merely one item on a laundry list of obligations the seller had yet to perform.

The case at bar is distinguishable from *The Record Company.* In this case the Seller, unlike Bummbusiness, does not have a myriad of obligations left to perform. The only obligation the Seller/Debtor has left to perform is its obligation to honor the covenant not to compete and unlike Bummbusiness' obligation to obtain the landlord's consent to the assignment of the leases, the Debtor's obligation is no longer a critical element.

Inasmuch as the Contract was no longer executory at the time of the commence-

ment of this bankruptcy case it is this Court's opinion that the Purchase Agreement is not an executory contract, and thus the trustee was under no duty to take affirmative steps to assume or reject it. As the trustee was under no duty to formally assume the Contract, his failure to take such action did not cause the Contract to be deemed rejected.

## B. The Proceeds Of The Contract Are Assets Of The Estate.

■ The Debtor maintains that even if the Purchase Agreement is not an executory agreement, the trustee is not entitled to the proceeds from the Agreement because the proceeds are not property of the estate pursuant to § 541(a)(6).

The monthly payments the Buyer makes under the Contract consist of, in part, the commissions earned by the Debtor for policies written prior to the Transfer Date. The payments also include monies earned as the result of the renewal of said policies. The Debtor maintains that although the sale of the business resulted in P & P taking over the contracts previously owned by the Debtor, he has continued to be in constant contact with the clients and has serviced and maintained relationships with the clients to insure renewals of the policies. Furthermore, he argues if he were to cease and desist from continuing these activities, the accounts would dry up. Hence, he claims that the commissions flowing from the renewals, because they are a direct result of his efforts, constitute earnings from services performed by him after the commencement of the case and are not property of the estate.

In support of his position the Debtor has provided a letter from the president of P & P which states that "the amount of monies disbursed to Leonard Bluman monthly via our office is very much contingent on the amount of time, effort and cooperation received from him, in his dealing with certain insurance clients. Without the above's cooperation, the monies disbursed to Leonard Bluman would rapidly diminish." Additionally, the Debtor has provided affidavits from several customers which state that he

is their main contact regarding their insurance contracts. It is the Court's observation that whatever services the Debtor may have rendered which were an advantage to P & P were voluntarily and gratuitously made by the Debtor after the period of time had expired during which he was required to render such services.

The Debtor relies on *In re Kervin,* 19 B.R. 190 (Bankr.S.D.Ala.1982) as support for the proposition that the monthly payments are not property of the estate. The *Kervin* court held that the renewal premiums due to the debtor insurance agent were not property of the estate because the debtor "is still employed by the insurance company, is still selling insurance, and is servicing the old policies. His right to renewal premiums is contingent upon his generation of new business and his providing policyholder service." *Kervin,* 19 B.R. at 193. In that case, the debtor's employment contract specifically stated that compensation under the contract was to be paid only while the agent was actively producing and servicing business thereunder. In the case at bar, the Debtor is not contractually obligated to perform any services in order to receive his monthly payments. The monthly payments are consideration for the transfer of the intangible assets comprising the Debtor's insurance business, goodwill and the covenant not to compete. The Debtor's only contractual obligation as far as servicing the accounts was to cooperate with P & P and assist P & P in retaining existing accounts in the first year following Transfer Date. To the contrary, P & P covenanted that it would service and maintain the accounts written by the Debtor in the same fashion that it would maintain its own accounts.

The case at bar is similar to *In re Froid,* 109 B.R. 481 (Bankr.M.D.Fla.1989). In *Froid* the debtor was an insurance agent for NML. His contract provided that he was entitled to be paid a renewal commission by NML regardless of whether he remained an agent of NML, during the first nine years following issuance by NML of a policy sold by him. The Court noted that the debtor serviced his clientele's policies personally, reviewing every item of

366

correspondence relating to an existing policy and every entry in his office's daily phone log, and attempting to contact every policy owner at least every 18 months. Nonetheless the Court held that the renewal commissions were assets of the estate stating:

> Although the Debtor's personal service to his clientele postpetition has helped to make him a success in the industry, it is clear that the bulk of the work to develop the relationships with these clients was performed prepetition. Further the renewal commissions would still be paid even if the Debtor terminated his relationship with NML. There is no evidence that any policyholder would actually cancel his policy if the Debtor ceased servicing the policy and another agent took up the reins. Renewal commissions which are not conditioned on future services, will be deemed property of the estate. *Froid*, 109 B.R. at 483.

As the renewals to the Debtor are not conditioned on future services and in fact the acts of the Debtor necessary to earn these payments are rooted in the prebankruptcy past, this Court finds that the commissions are not earnings from services of the Debtor and are therefore part of the estate.

This Court is not unmindful of the equitable arguments presented by the Debtor. The Debtor's papers indicate that these payments allow him to maintain a decent standard of living. They also state that the Debtor, a 57 year old man, had been working in the insurance business since 1974 and the proceeds of this contract represent his life's work. However, this Court cannot escape the conclusion that the Contract is a purchase agreement, not an employment contract. The monthly payments to the Debtor represent the consideration paid for the intangible assets of the Debtor's insurance business. In no way is payment contractually tied to the Debtor performing services. Therefore the monthly payments are profits from property of the estate and should be included in the estate for the benefit of creditors.

The court in *In re Sloan*, 32 B.R. 607 (Bankr.E.D.N.Y.1983) stated:

> The decisive factor in determining whether post-petition income of the debtor will be deemed property of the estate is whether that income accrues from post-petition services of the debtor.... Where a debtor derives post-petition commissions under a prepetition contract, and such commissions are dependent upon the continued services of the debtor, they do not constitute property of the estate.... Where, however, the debtor essentially fulfills all his obligations prior to the filing of his petition the post-petition commissions accruing therefrom will be deemed property of the estate.... In other words, the debtor's income passes to the trustee as property of the estate if all the acts of the debtor necessary to earn it are rooted in the pre-bankruptcy past. *Sloan*, 32 B.R. at 611 (citations omitted.)

There are two related issues remaining which neither the Debtor nor the Trustee address. The first of these is whether a portion of each monthly payment, which is in consideration for the Debtor's covenant not to compete, should not be deemed property of the estate because it represents compensation for personal services of the Debtor; secondly, whether the trustee is precluded from assuming the contract at all since the covenant not to compete is a personal services contract.

"Under the Code, its has been held that a contract for personal services is excluded from the estate pursuant to both § 541(a) and § 365(c)." *In re Carrere*, 64 B.R. 156, 158 (Bankr.C.D.Cal.1986). Personal services contracts are excluded from the estate since it is beyond the power of the court to compel the debtor to perform the contract. "[T]he underpinning of the rule forbidding specific enforcement of personal service contracts is the Thirteenth Amendment's prohibition of involuntary servitude. It has been strongly suggested that judicial compulsion of services would violate the express command of that amendment." *In re Taylor*, 91 B.R. 302, 312 (Bankr.D.N.J.

1988), *aff'd*, 103 B.R. 511 (D.N.J.1989), *appeal dismissed*, 913 F.2d 102 (3d Cir.1990).

In the instant case 25% of payments received by the Debtor are in consideration for the Debtor's Covenant not to compete. Hence this Court is faced with the question of whether a contract which compensates an individual for forbearing to engage in activity is tantamount to a personal services contract.

In *In re Hammond*, 35 B.R. 219 (Bankr. W.D.Okla.1983), the debtor entered into a contract for sale where he was paid a base price for its stock. "Additionally, as part of this Contract, the shareholders agreed not to 'take employment with, act on behalf of, or own any interest in excess of six percent ... in any enterprise' which is competing with [the purchaser].... As consideration for the noncompetition covenant Hammond was to receive a total of one million two hundred and sixty thousand dollars in installments". *Hammond*, 35 B.R. at 220. The Court concluded that future installment payments due under the anti-competition clause were not property of the estate because payment was contingent upon the debtor's compliance with the anti-competition contract. The Court stated:

> If an entity, be it Hammond or Hammond's estate, is to receive the payments in question, Hammond must abide by the agreement. We cannot force Hammond to comply. 'The bankrupt ... cannot be compelled to perform work or services for the benefit of his creditors or his trustee in bankruptcy.' 3 Remington on Bankruptcy § 1228.25 (1941). It is a foil which thrusts both ways. Hammond is therefore performing a service which is not 'sufficiently rooted' in the bankruptcy past so as to render the payments property of the estate. *Hammond*, 35 B.R. at 223.

*Hammond* is distinguishable from the case at bar. In *Hammond* the post-petition payments under the covenant were to be due and owing only upon compliance with the covenant. Here, although the Debtor must comply with the covenant not to compete, payment became due and owing upon the transfer of the Debtor's business to P & P.

This Court is not in accord with *Hammond* where it holds that a court may not compel a person to comply with a covenant not to compete. Although a debtor may not be compelled to specifically perform a personal service contract, a covenant not to compete is enforceable if reasonable. Courts have issued negative injunctions prohibiting a person from engaging in activity that is violative of a covenant not to compete if it is found that damages will not adequately compensate the nonbreaching party to the contract. *See In re Carrere*, 64 B.R. at 160. Such negative injunctions do not violate the Thirteenth Amendment. For this reason, consideration paid for the Debtor's covenant not to compete is not tantamount to earnings from services performed by an individual which should be excluded from the estate, nor is this contract the equivalent of a contract for personal services which the trustee is prohibited from assuming, under 365(c)(1). *See also In re Hofstee*, 88 B.R. 308, 312 (Bankr. E.D.Wash.1988) (portion of proceeds from debtor's postpetition participation in federal dairy termination program attributable to performance of noncompetition covenant are property of estate), *aff'd*, 116 B.R. 872 (B.A.P. 9th Cir.1990); *In re Bowling*, 64 B.R. 710 (Bankr.W.D.Mo.1986) (same).

In a similar vein, in *In re Selby*, 76 B.R. 170 (Bankr.D.Or.1987), the court held that payments to the Debtor were not compensation paid or payable for personal services so as to make such payments exempt property under Oregon state law because "[t]he payments to Mrs. Selby are not in consideration for personal services. Rather, the sums are in exchange for an agreement by the debtor not to compete and for rights incident to the business premises of the debtor." *Selby*, 76 B.R. at 171.

For the reasons stated above, this court holds that the payments made by the buyer which have come into the possession of the trustee as well as all future payments made pursuant to the contract are property of the estate.

**368**

## CONCLUSION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sec. 157(a) and 28 U.S.C. Sec. 1334. This matter is a core proceeding pursuant to 28 U.S.C. Sec. 157(b)(2)(A).

2. The Purchase Agreement at issue is not an executory contract. The proceeds of the Purchase Agreement are property of the estate. The motion of the Debtor for an order directing the trustee to abandon the Purchase Agreement and restraining the trustee from transferring or distributing any of the funds collected flowing from the Purchase Agreement is Denied.

SUBMIT ORDER consistent with this opinion.