**In re John A. ANDREWS, Debtor.**

**John A. ANDREWS, Movant,**

**v.**

**Richard G. HALL, Trustee.**

**Bankruptcy No. 92–14879.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 31, 1993.

---

**160**

Wayne G. Travell, Tucker, Flyer & Lewis, Washington, DC, for debtor.

Richard G. Hall, Annandale, VA, Chapter 7 trustee.

John H. Spellman, Stephen L. Humphrey, George N. Panagakis, Hopkins & Sutter, Washington, DC, for First American Bank.

Michael J. Wendorf, Washington, DC, for The Riggs National Bank of Washington, D.C.

Michael Zupan, Russell Fink, Charles McAleer, Hazel & Thomas, Tarmac Mid–Atlantic, Inc., successor-in-interest by merger to Tarmac Acquisition, Inc., Norfolk, VA, for Tarmac.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This case comes before the court on motion of debtor to Compel Trustee to Abandon Property. Debtor's chapter 7 bankruptcy trustee claims an interest in postpetition quarterly installment payments due the debtor under a prepetition non-competition agreement. Debtor asserts the postpetition payments are "earnings from services performed" and excluded from his bankruptcy estate. Hearing was held on February 10, 1993, and the court took the matter under advisement.

For the reasons stated in this memorandum opinion the court denies the debtor's motion and finds that postpetition payments due debtor under a prepetition non-competition agreement constitute property of his chapter 7 estate and are not excluded as "earnings from services performed."

### Findings of Fact

Debtor John A. Andrews filed his chapter 7 bankruptcy petition on October 14, 1992, and Richard G. Hall was appointed chapter 7 bankruptcy trustee. A meeting of creditors was held on November 19, 1992, and on December 4, 1992, debtor filed this motion.

For many years Andrews successfully engaged in the ready-mix concrete business. He owned and operated a ready-mix concrete company called AMAX Corporation ("AMAX") and other related entities. On June 6, 1989, Andrews sold the assets of AMAX and other related entities for approximately $9,000,000.00 to a company called Tarmac Acquisition, Inc. ("Tarmac"). As a condition of the sale Andrews agreed to enter into a non-competition agreement which was subsequently executed on July 17, 1989.

The terms of the non-competition agreement precluded Andrews from engaging in the ready-mix concrete business throughout most of the Washington, D.C., metropolitan area for a period of four years. Payment terms under the non-competition agreement were as follows:

In consideration for the obligations of ... [Andrews] ... in this agreement ... [Tarmac] ... shall pay ... the sum of $1,000,000, payable in quarterly installments of $62,500 each, together with quarterly interest payments on the remaining principal balance calculated at the rate of 10% simple interest per annum, with the first such installment due and payable three (3) months after the Closing Date.... *[Tarmac] ... shall have the right to set off against any and all amounts owed to ... [Andrews] ... any and all amounts claimed to be*

*due to ... [Tarmac] ... by virtue of any breach by, or indemnification claim against, any Seller or Stockholder or any of their Affiliates (as such terms are defined in the Related Purchase Agreements) of or under the Related Purchase Agreements ...*

Debtor's Exhibit A, p. 3 (emphasis added).

Tarmac exercised its set off right as provided above in the approximate amount of $50,000.00 against the $62,500.00 payment due on July 17, 1992; the balance of this payment was apparently garnished and was either paid to or is being held in escrow by First American Bank of Virginia. Overall Tarmac has exercised its set off rights against approximately $400,000.00 of the amount due debtor under the non-competition agreement.

The next payment was due on October 17, 1992, three days after Andrews filed his bankruptcy petition. However, Tarmac is withholding this and any further payments pending this court's determination of whether the money is property of the debtor's bankruptcy estate. The total remaining unpaid under debtor's non-competition agreement is approximately $248,000.00.

At the meeting of creditors on November 19, 1992, the debtor claimed that his primary occupation was real estate development. Debtor currently resides in St. John, United States Virgin Islands, and may be involved with an entity called St. John Land Investment Limited Partnership.

Andrews testified that the $62,500.00 quarterly payment was approximately equivalent to the salary he was receiving before the sale to Tarmac, and his tax accountant testified that the quarterly payments were being treated as ordinary income as opposed to capital gains income on debtor's income tax returns.[1]

### Position of Parties

DEBTOR.

Andrews argues the postpetition payments due under the non-competition agreement should be excluded from his bankruptcy estate pursuant to 11 U.S.C. 541(a)(6). Because Andrews must "perform" under the agreement (i.e., not compete) to realistically receive payment, he argues that the payments are "earnings from services performed by an individual debtor after the commencement of the case."

TRUSTEE.

Trustee argues the consideration due under the non-competition agreement is inexorably intertwined with the asset purchase agreement entered into between Tarmac and Andrews. This is apparent from the set off rights Tarmac retained in the non-competition agreement and the express condition that Andrews agree to enter into a non-competition agreement. The trustee argues the debtor's right to the payments arises solely from the sale of the business and that the payments represent the purchase price for the intangible "good will" of the business. Moreover, the expansive definition of property of the estate in 11 U.S.C. § 541(a) covers all legal or equitable interest in property of the debtor unless specifically excluded by statute. The trustee argues that "doing nothing" pursuant to a non-competition agreement does not fall within the plain meaning of "earnings from services performed by an individual debtor after the commencement of the case." 11

---

**1.** Debtor's presentation at hearing was similar to what it might have been in income tax litigation concerning the proper tax treatment of funds received pursuant to a contractual covenant not to compete. In fact, debtor's case relied heavily upon his tax accountant whose testimony addressed what were essentially income tax issues to demonstrate that under the Tarmac purchase the consideration fixed for the covenant not to compete would withstand scrutiny under standards of federal income tax law.

This court is aware that as a general matter one who receives payment under a covenant not to compete realizes ordinary taxable income under the rationale that payment for not performing services has the same income tax attributes as payment for performance of services. Even so, in my view this and other factors bearing on the income tax aspects of the issue have little probative value on the bankruptcy question here; in other words, the fact that debtor may have properly treated his receipts under the covenant as ordinary income on his income tax returns does not provide a basis for the result in this court.

U.S.C. § 541(a)(6). In short, the trustee argues that excluding these payments from the bankruptcy estate would be a distortion of the Code's "fresh start" policy.

### Discussion and Conclusions of Law

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), including "proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are *earnings from services performed by an individual debtor after the commencement of the case*." 11 U.S.C. § 541(a)(6) (emphasis added); *see also* James L. Rigelhaupt, Jr., Annotation, *Exception From Bankruptcy Estate, Under 11 U.S.C.S. § 541(a)(6), of Earnings From Services Performed by an Individual Debtor After Commencement of Case*, 76 A.L.R.Fed. 853 (1992).

█ Although property of the estate is broadly defined under § 541, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), there is a temporal limit on its inclusiveness. Property of estate generally includes property held by a debtor at the commencement of the bankruptcy case and its proceeds. 11 U.S.C. § 541(a)(1) & (6). While this temporal limitation works well with property the acquisition of which can be readily situated in time, its application becomes problematic with respect to rights to future payments. *See* George R. Pitts, *Rights to Future Payment as Property of the Estate Under Section 541 of the Bankruptcy Code*, 64 Am.Bankr.L.J. 61, 62 (1990). When considering rights to future payment the court must strike a balance between the necessi-

ty of dedicating assets to the satisfaction of pre-bankruptcy debt and giving the debtor an opportunity for a fresh start unhampered by the pressure and discouragement of pre-existing debt.

In *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) the Supreme Court stated that:

The main thrust of § 70(a)(5)[2] is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end, the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. However, limitations on the term do grow out of other purposes of the Act; one purpose ... is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future.

*Segal v. Rochelle*, 382 U.S. at 379, 86 S.Ct. at 515 (citations omitted).

The Court in *Segal* ultimately concluded that when an asset is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make a unencumbered fresh start" it should be regarded as property of the estate. *Segal*, 382 U.S. at 380, 86 S.Ct. at 515.

█ In this case the court must decide whether future payments due the debtor under a non-competition agreement are property of the estate or excluded under the "earnings exception" of 11 U.S.C. § 541(a)(6).[3] The fundamental question is whether adhering to a non-competition obligation qualifies as "services performed" under 11 U.S.C. § 541(a)(6). Otherwise,

---

**2.** Section 70(a) of the Bankruptcy Act is the predecessor of § 541 of the Bankruptcy Code.

**3.** The case law is divided on this issue; however, the majority of cases and those I find more persuasive hold that future payments due under a covenant not to compete are property of the debtor's bankruptcy estate. *Unsecured Creditor's Committee v. Prince (In re Prince)*, 127 B.R. 187, 191–92 (N.D.Ill.1991); *In re McDaniel*, 141 B.R. 438, 440 (Bankr.N.D.Fla.1992); *In re Bluman*, 125 B.R. 359, 366–67 (Bankr.E.D.N.Y. 1991); *In re Weyland*, 63 B.R. 854, 863 (Bankr.

E.D.Wis.1986); George R. Pitts, *Rights to Future Payments as Property of the Estate Under Section 541 of the Bankruptcy Code*, 64 Am.Bankr.L.J. 61, 71 (1990) (citing *In re Weyland*, 63 B.R. 854, 863 (Bankr.E.D.Wis.1986)); *cf. Williams v. Tomer (In re Tomer)*, 147 B.R. 461, 472 (S.D.Ill. 1992); *contra In re Hofstee*, 88 B.R. 308, 312 (Bankr.E.D.Wash.1988), *aff'd in part*, 116 B.R. 872 (B.A.P. 9th Cir.1990); *In re Hammond*, 35 B.R. 219, 223 (Bankr.W.D.Okla.1983); *but see Larson v. Cameron (In re Larson)*, 147 B.R. 39, 42–43 (Bankr.D.N.D.1992).

these payments would clearly be "proceeds ... of or from property of the estate" because they were generated by the sale of prepetition property. 11 U.S.C. § 541(a)(6).

Debtor suggests the Fourth Circuit's decision in *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir.1985), is instructive. In *Lubrizol*, the Fourth Circuit addressed the question of whether or not an obligation of forbearance was sufficient to establish one side of an executory contract under Professor Countryman's definition.[4] *Lubrizol*, 756 F.2d at 1045–46. *Lubrizol* involved a licensing agreement in which the debtor was restricted from lowering its royalty rate to other licensees without also lowering the rate of Lubrizol. The court ruled that:

> The unperformed, continuing core obligations of notice and forbearance in licensing made the contract executory as to ... [the debtor].... In *Fenix Cattle Co. v. Silver (In re Select-A-Seat Corp.)*, 625 F.2d 290, 292 (9th Cir.1980), the court found that an obligation of a debtor to refrain from selling software packages under an exclusive licensing

agreement made a contract executory as to the debtor notwithstanding the continuing obligation was only one of forbearance. Although the license to Lubrizol was not exclusive, ... [the debtor] ... owed the same type of *unperformed continuing duty of forbearance* arising out of the most favored licensee clause running in favor of Lubrizol. Breach of that duty would clearly constitute a material breach of the agreement.

*Lubrizol*, 756 F.2d at 1045–46 (emphasis added).

In this case the debtor argues that if an "unperformed continuing duty of forbearance" is sufficient to satisfy one side of an executory contract then performance under a non-competition agreement is sufficient to qualify as "services performed" under § 541(a)(6).[5] Although the analogy seems appealing on its face, I believe it is a non sequitur.

If the debtor violates the non-competition agreement in this case that may or may not be a material breach of the agreement that would excuse the performance of Tarmac.[6]

---

**4.** Professor Countryman's definition of executory contract was adopted and set out by the Fourth Circuit in *Gloria Manufacturing Corp. v. International Ladies' Garment Workers' Union*, 734 F.2d 1020, 1022 (4th Cir.1984). A contract is executory if the:

> [O]bligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

*Gloria Manufacturing Corp.*, 734 F.2d at 1022 (citing Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973)).

**5.** The debtor has not cited *Lubrizol* for the proposition that this non-competition agreement should be considered an executory contract that is deemed rejected due to the trustee's failure to assume or reject it within 60 days as required by 11 U.S.C. § 365(d)(1). Although this argument would be plausible given the analysis in *Lubrizol*, the debtor has chosen not to make this argument. If this non-competition agreement is found to be a rejected executory contract the debtor would be entitled to payments due only up to the point of rejection, and Tarmac would not be obligated for any future payments. Under debtor's theory he is entitled to *all* future payments due under the non-competition agree-

ment as "earnings from services performed." 11 U.S.C. § 541(a)(6).

In any event, the debtor cites *Lubrizol* only for the purpose of making the analogy set out in the text, an analogy I find unpersuasive.

**6.** It is not disputed that Tarmac still owes material performance. If Tarmac defaulted on its obligation to make payments to the debtor, that would be a material default and such breach would excuse the performance of the debtor. *Cf. In re Bluman*, 125 B.R. 359, 362 (Bankr. E.D.N.Y.1991). However, if the debtor breached the non-competition agreement it is not certain that Tarmac would be excused from performance. *Cf. In re Bluman*, 125 B.R. at 362. Tarmac may be entitled only to injunctive relief or an award of damages as called for under the agreement:

> 4. *Injunctive Relief....* [Andrews] ... acknowledges that a breach of the restrictions contained in Section 1 of this Agreement will cause irreparable damage to ... [Tarmac] ... the exact amount of which will be difficult to ascertain, and that remedies at law for any such breach will be inadequate. Accordingly, ... [Andrews] ... agrees that if he breaches the restrictions ... then ... [Tarmac] ... shall be entitled, in addition to damages, to injunctive relief, without posting bond or other security.

However, even if so it does not logically follow that adhering to a non-competition obligation is tantamount to "services performed" in the context of § 541(a)(6). The statutory parameters and policy rationales affecting whether or not a contract is executory are different from those affecting whether property is excluded from the bankruptcy estate as earnings from services performed. A functional approach to determining whether a contract is executory focuses on whether a benefit to the estate can be realized from rejection of a particular contract. *See, e.g., In re Bluman,* 125 B.R. 359, 363 (Bankr.E.D.N.Y. 1991) (citations omitted). The earnings exception in § 541(a)(6) on the other hand prevents the broad definition of property of the estate from converting chapter 7 cases into chapter 13 cases, and consequently facilitates the debtor's fresh start.[7]

Although the non-competition agreement in this case is a separate document with allegedly separate consideration from the sale of the tangible assets of the business, I believe this separation is nominal, not substantive. If not for the sale of the business in this case there would not have been a non-competition agreement. In fact, the sale of the business was expressly conditioned upon Andrews entering into a non-competition agreement. Moreover, Tarmac expressly retained the right to set off monies found to be owing under the sale agreement against amounts it was required to pay under the non-competition agreement. In this regard the court agrees with the trustee that the non-competition agreement is inexorably intertwined with the asset sale agreement. Accordingly, I must conclude that the non-competition agreement was merely ancillary to the sale of a going concern, *In re Bluman,* 125 B.R. 359, 363 (Bankr.E.D.N.Y.1991), and that any payments due under the non-competition agreement are "sufficiently rooted in the pre-bankruptcy past" to constitute property of the debtor's bankruptcy estate. *Segal,* 382 U.S. at 380, 86 S.Ct. at 515.

I also conclude that the payments due under the non-competition agreement are *not* "entangled with ... [Andrews] ... ability to make an unencumbered fresh start." *Segal,* 382 U.S. at 380, 86 S.Ct. at 515. Andrews is free to pursue any gainful employment he wishes except in a narrow geographical area where he no longer resides.[8]

---

Debtor's Exhibit 1, p. 4. (emphasis in original).

Although a representative from Tarmac testified that he understood the installment payment mechanism provided additional assurance that Andrews would perform, the agreement is silent as to whether or not the payments are subject to immediate forfeiture upon breach by Andrews. This is a critical distinction from the case the debtor cites to support his position, *In re Hammond,* 35 B.R. 219, 220 (Bankr.W.D.Okla.1983). In *Hammond* the installment payments due under the covenant not to compete were "subject to absolute forfeiture upon breach of the covenant." 35 B.R. at 220.

In this case it is more likely that Tarmac negotiated the installment payment mechanism in conjunction with (and to preserve) the set off rights that *are* expressly provided for in the "payment terms" section of the agreement. The set off rights would be nugatory without an installment payment mechanism, but Tarmac's right to seek damages or injunctive relief against Andrews in the event of breach exists independent of the installment payment mechanism.

7. However, it is important to note that the primary assurance that the debtor will be provided the fresh start promised by the Bankruptcy Code is not found in the concept of property of the estate enunciated in § 541 but rather is provided through the system of exemptions outlined in § 522, which is premised on the assumption that any property subject to exemption is already property of the estate. *See* George R. Pitts, *Rights to Future Payment as Property of the Estate Under Section 541 of the Bankruptcy Code,* 64 Am.Bankr.L.J. 61, 61 (1990).

8. In finding these payments to be property of the estate I have not effectively converted this chapter 7 case to a chapter 13 case, nor have I breached the principle against "involuntary servitude" found in the Thirteenth Amendment to the United States Constitution.

The law is clear that a court of equity will not decree specific performance of a contract for personal services involving skill, labor and judgment. *See generally* 17 Mich.Juris. *Specific Performance* § 66 (1979) (citations omitted). However, enforcing this non-competition agreement would not involve specific performance of personal services involving skill, labor or judgment. In order to preserve these future payments for the benefit of the estate the trustee or a creditor in interest may request this court to enjoin the

Accordingly, this court holds that all payments under the non-competition agreement are property of the bankruptcy estate pursuant to 11 U.S.C. § 541. The payments due in October 1992, January 1993, April 1993, and the last payment due in July 1993 should be made to the chapter 7 bankruptcy trustee, subject to Tarmac's right of set-off.[9]

A separate order will be entered.

debtor from violating the non-competition agreement. I believe this court could issue such an injunction. *In re Bluman,* 125 B.R. 359, 367 (Bankr.E.D.N.Y.1991); *contra In re Hammond,* 35 B.R. 219, 223 (Bankr.W.D.Okla.1983). In my opinion this would not be decreeing specific performance of personal services because such an injunction would not require the debtor to *do* anything. In fact, injunctions are a common method of enforcing non-competition agreements. *See, e.g., Roanoke Engineering Sales Company v. Rosenbaum and Rosenbaum of* *Roanoke, Inc.,* 290 S.E.2d 882 (Va.1982). Just as these future payments are *not* earnings from services performed under bankruptcy law, enjoining the debtor from violating the non-competition agreement would *not* be decreeing specific performance of personal services in contravention of state law.

9. However, Tarmac will be required to obtain relief from the automatic stay in order to exercise its set off rights pursuant to 11 U.S.C. § 553(a). *See* 11 U.S.C. § 362(a)(7).