Martin Francis LAUGHLIN,
Plaintiff–Appellant,

v.

David NICKLESS, Trustee,
Defendant–Appellee.

Civ. A. No. 93–40153–NMG.

United States District Court,
D. Massachusetts.

Jan. 18, 1996.

Elliot S. Silverstein, Boston, MA, for appellant.

David M. Nickless, Fitchburg, MA, for appellee.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is an appeal by Martin Francis Laughlin ("Laughlin") from the ruling of the United States Bankruptcy Court entered on July 14, 1993, that the "personal services" exception of 11 U.S.C. § 541(a)(6) does not apply to certain post-petition payments owed under a "Mutual Releases and Settlement Agreement" ("the Settlement Agreement" or "the Agreement"), because the Agreement was not an executory contract. The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). Upon consideration of the briefs filed by the parties, this Court finds that the conclusions of law made by the Bankruptcy Court were sound and well reasoned and that its decision should, therefore, be affirmed.

*Background*

In 1989, Laughlin filed an action against American Finance Group ("AFG") in Worcester Superior Court. The lawsuit concerned a dispute between the parties with respect to Laughlin's employment by AFG. In January, 1991, the parties settled the lawsuit after signing the Agreement. Paragraph 1 of the Settlement Agreement provided for AFG to pay Laughlin an annual salary of $250,796 in bi-weekly installments until June 23, 1993, less amounts to be withheld for federal and state taxes. Paragraph 2 of the Agreement provided that any outside income of Laughlin in excess of $30,000 would be set off against the amount of salary due under the Agreement. The Settlement Agreement also provided for AFG to forgive debt owed by Laughlin to AFG, and for the payment of Laughlin's legal fees.

Paragraph 3 of the Agreement, which plays a prominent role in the dispute pending before this Court, states that Laughlin would:

> provide AFG with his assistance, to the extent reasonably necessary and at a mutually agreeable time and place, and in no event more than five hours in any given month, in connection with any of the AFG investment programs in existence.

The services were to be provided only upon the request of AFG, and Laughlin's obligation to perform them would terminate on June 30, 1993. At no time did AFG actually request Laughlin to perform any such services.

On October 21, 1992, Laughlin filed a petition for protection under Chapter 7 of the Bankruptcy Code. Upon learning of Laughlin's filing, AFG refused to make any of the bi-weekly payments to him under the Settlement Agreement from and after December 18, 1992. AFG allegedly has paid the sums into escrow.

In February, 1993, Laughlin commenced an adversary proceeding in the Bankruptcy Court, seeking a declaratory judgment that 1) the Settlement Agreement was a personal

services contract, 2) the proceeds were not part of his Bankruptcy estate, 3) the Trustee could not assume the Agreement, and 4) Laughlin was entitled to the proceeds of the Agreement. Both parties moved for summary judgment.

On July 12, 1993, the Bankruptcy Court issued a bench ruling that the Settlement Agreement was not an executory contract and that no personal services were required. The Bankruptcy Court thus concluded that the "personal services" exception of 11 U.S.C. § 541(a)(6) did not apply to that part of the Settlement Agreement which provided for Laughlin's "salary" of $250,796. Section 541(a)(6) includes as property of the bankruptcy estate

> [p]roceeds, product, offspring, rents, or profits of or from property of the estate *except* such as are earnings from services performed by an individual debtor after the commencement of the case.

*Id.* (emphasis added). The Court, therefore, denied Laughlin's motion for summary judgment, allowed the Trustee's motion for summary judgment, and ordered a turnover of the disputed funds. Laughlin then filed the appeal pending before this Court.

### Standard of Review

It is well settled that this Court may not disturb the Bankruptcy Court's findings of fact unless "clearly erroneous," see Fed. R.Bankr. 8013, while that Court's conclusions of law are subject to *de novo* review. *In re DN Associates*, 3 F.3d 512, 515 (1st Cir. 1993). The determination as to the applicability of the "personal services" exception of 11 U.S.C. § 541(a)(6) is one of law and the Bankruptcy Court's decision on that issue is, therefore, subject to plenary review. *See In re Prince*, 127 B.R. 187, 189 (N.D.Ill.1991).

### Analysis

Appellant maintains that reversal of the Bankruptcy Court is required because 1) the Settlement Agreement was a personal services contract, and 2) it was an executory contract. These contentions are considered in that order.

### A. The Agreement was not a personal services contract

Laughlin first argues that the Settlement Agreement was a personal services contract containing material terms regarding service, specifically, Laughlin's obligation to perform up to five hours of business consulting services per month at AFG's request. Because he remained obligated to perform such services until June 30, 1993, Appellant contends that payments to be made to him after October 21, 1992 were post-petition earnings which should be excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(6).

In support of his argument, Laughlin relies heavily upon *In re Clark*, 100 B.R. 317 (E.D.La.1989), *aff'd,* 891 F.2d 111 (5th Cir. 1989). In *Clark*, the District Court reversed the Bankruptcy Court's conclusion that a professional football player's post-petition salary was a part of the bankruptcy estate, notwithstanding the provisions of § 541(a)(6). The Bankruptcy Court based its decision upon a term in the football player's contract which provided that, upon passing a physical examination at the beginning of the season, he would receive his full salary even if his skill or performance were unsatisfactory and he were waived. This "skill guarantee" provision differed from the standard player contract, which required a player to "maintain a satisfactory level of skill or performance or risk termination of the contract and its attendant monetary benefits." *Id.* at 319. The Bankruptcy Court reasoned that:

> the [player's] entitlement to the [payments made each week following his filing for bankruptcy was] not dependent upon any further services as a 'skilled football player,' but rather was dependent only upon his passing the [pre-petition] physical examination.

*Id.* (quoting Bankruptcy Court's decision).

In reversing the Bankruptcy Court, the District Court read the "skill guarantee" in light of the contract as a whole, observing that the contractual provision:

> only reflect[ed] additional job security which [the player] obtained in his contract talks with the [team]. The [provision did] not, by its text or within the structure of

the contract, make meaningless the obligations he owed to the [team] as they were mandated in other provisions of his contract ... While the Bankruptcy Court was correct in inferring that [the player's] skill or performance were irrelevant to one aspect of his salary, skill or performance were not, under the contract, the sole events which conditioned [his] receipt of his full salary.

*Id.* at 320. Concluding that the Bankruptcy Court's ruling distorted the contract, the District Court held that, pursuant to § 541(a)(6), the player's post-petition salary payments were not part of the bankruptcy estate. *Id.* at 320–21.

It is instructive that the District Court in *Clark* viewed the provision at issue in light of the player's contract as a whole, examining the substance of the agreement. Conducting a similar examination of the Settlement Agreement in the instant action leads to the inevitable conclusion that the Bankruptcy Court's determination was correct. Indeed, focusing solely on one particular provision of the Agreement, without considering that provision's relationship to the Agreement as a coherent whole, distorts the contract. *Cf. id.* at 320.

As an initial matter, this Court observes that the overarching purpose of the "Mutual Releases and Settlement Agreement" was to accomplish precisely what its name suggests: to settle a hotly contested lawsuit between Laughlin and AFG. The Agreement sought to settle various claims by Laughlin against AFG the merits of which this Court has no reason to consider. Laughlin's "obligation" to provide up to five hours of consulting services per month was not the essence of the Settlement Agreement, nor was it the sole event upon which payment was conditioned.

Viewing the post-petition payments due under the Agreement in light of the contract as a whole, then, this Court agrees with the Bankruptcy Court that the proceeds due to Laughlin under the Agreement were not payments for services, but rather consideration for release of debtor's claims against his former employer. A contrary decision would result in a windfall to the debtor at the expense of creditors, and would serve neither the letter nor the spirit of the "personal services" exception of § 541(a)(6).

### B. *The Agreement was not an executory contract*

■ Laughlin also disputes the Bankruptcy Court's conclusion that the Settlement Agreement was not an executory contract. The determination whether a contract is executory is one of law, *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1045 (4th Cir.1985), *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986), and hence the Court reviews that determination *de novo.*

■ Although the Bankruptcy Code does not define the term "executory contract," many courts utilize the definition advanced by Professor Vern Countryman:

[a contract] under which the obligation [of] both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Vern A. Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973) (quoted in *In re La Electronica, Inc.,* 995 F.2d 320, 322 n. 3 (1st Cir.1993)); *see also In re Three Star Telecast, Inc.,* 93 B.R. 310 (D.P.R.1988). The Agreement is executory, Laughlin reasons, because he was required to perform services at AFG's request and AFG, in turn, was obligated to pay him a salary until June 23, 1993.

■ The Trustee counters that the Settlement Agreement is not an executory contract because "no material obligations remained from either party other than the payment of money." Appellee's Brief at 6. Appellee does not dispute that, in some circumstances, a duty to pay money may constitute a material remaining obligation to the contract where there is a material obligation remaining on the other side. *See In re Wegner,* 839 F.2d 533, 536–37 (9th Cir.1988). Nor does the mere contingency of an obligation prevent that obligation from being executory. *E.g., Lubrizol Enterprises, Inc.,* 756 F.2d at 1046.

In the case at bar, however, this Court agrees with the Bankruptcy Court that the "contingent obligation" owed by Laughlin to AFG was illusory, not material. The primary objective of the Settlement Agreement was achieved when Laughlin dismissed his numerous claims against AFG. Any "obligation" on the part of Laughlin, moreover, 1) was ancillary to the bargained-for agreement to settle the claims, 2) was devoid of substance, and 3) failed to rise to the level of material future performance. *Cf. In re Bluman,* 125 B.R. 359, 363 (Bankr.E.D.N.Y. 1991). Accordingly, the Settlement Agreement fails to satisfy Professor Countryman's definition of an executory contract.

In *In re Gladding Corp.,* 22 B.R. 632, 635 (Bankr.D.Mass.1982), the Bankruptcy Court observed that courts:

should not be bound by static definitions of what is an executory contract, but should strive to satisfy the purposes of the [Code] in conjunction with the goals of the debtor (or trustee), in order that equity may be served.... Countryman sets out only the threshold inquiry, and leaves for the courts further considerations to determine whether a contract is [executory]. On that basis, Countryman serves more as an "exclusionary" rule rather than as the ultimate test of an executory contract.

*Id.* Perhaps in recognition of the foregoing principle, the parties' briefs have addressed the issue of whether the Settlement Agreement satisfies an alternative test for executory contracts, the so-called "functional analysis" developed by the Sixth Circuit in *In re Jolly,* 574 F.2d 349 (6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978). Because this Court concludes, as did the Bankruptcy Court, that the Agreement fails to satisfy the Countryman "exclusionary rule" for executory contracts, there is no need to dwell long on that alternative formulation.

■ Under the *Jolly* functional approach,

it is necessary to work backward, proceeding from an examination of the goals rejection [of the contract] is expected to accomplish.... If those purposes have already been accomplished or if they cannot be accomplished through rejection, then the contract is not executory....

*Id.* at 351. The "purposes" referred to in the foregoing include 1) taking advantage of contracts which will benefit the estate, 2) relieving the estate of burdensome contracts, 3) promoting the debtor's fresh start, 4) permitting the determination of claims, and 5) clarifying the status of third parties with respect to their status vis-a-vis the estate. *Bluman,* 125 B.R. at 363.

■ In applying the *Jolly* test to the case at bar, the Trustee maintains that by rejecting the contract:

there is no benefit to the estate.... No determination of claims or clarification of status as to the estate will be achieved. The obvious immediate effect of rejection of the Agreement ... [will be] to create a cash windfall for AFG, and creditors of the estate will be severely prejudiced.

Appellee's Brief at 11–12. This Court agrees and heeds the advice of Professor Countryman that the concept of an executory contract "should not extend to situations where the only effect [of finding such a contract] would be to prejudice other creditors of the estate." *Bluman,* 125 B.R. at 363 (quoting Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. at 450). Consequently, the Court will affirm the Bankruptcy Court's determination on that issue.

### ORDER

For the foregoing reasons, this Court concludes that the Bankruptcy Court correctly determined that 1) the post-petition payments owed pursuant to the Settlement Agreement were the property of the estate, and hence the "personal services" exception of Bankruptcy Code § 541(a)(6) was not applicable to them, and 2) the Settlement Agreement was not an executory contract. The ruling of the Bankruptcy Court is, therefore, AFFIRMED and this appeal is DISMISSED.

SO ORDERED.