In the Matter of WALL TIRE DISTRIBUTORS, INC., Debtor.

In the Matter of AUTOMOTIVE INDUSTRIES, INC., Debtor.

In the Matter of JIM MARTIN TIRE CO., INC., Debtor.

WALL TIRE DISTRIBUTORS, INC., Plaintiff,

v.

Donald WRIGHT, Defendant.

Bankruptcy Nos. 89–52423 to 89–52425. Adv. No. 90–5041.

United States Bankruptcy Court, M.D. Georgia, Macon Division.

July 13, 1990.

---

5.   171 Ga.App. 710, 320 S.E.2d 784 (1984).

Gus H. Small, Jr., Shereen M. Walls, Small & White, Atlanta, Ga., for plaintiff.

John T. McGoldrick, Jr., Martin, Snow, Grant & Napier, Macon, Ga., for defendant.

ROBERT F. HERSHNER, Jr., Chief Judge.

## STATEMENT OF THE CASE

Wall Tire Distributors, Inc., Debtor, Plaintiff, filed a petition under Chapter 11 of the Bankruptcy Code on September 25, 1989. Plaintiff continues to operate its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.[1] Plaintiff filed an adversary proceeding against Donald Wright, Defendant, on March 27, 1990. The complaint asks the Court to rule that a certain equipment lease between Plaintiff and Defendant is a security agreement rather than a true lease. Plaintiff also asks the Court to set aside certain payments made by Plaintiff to Defendant as preferential. Defendant filed a timely response to the complaint. The complaint came on for trial on June 28, 1990. The Court, having considered the evidence presented and the arguments of counsel, now publishes its findings of fact and conclusions of law.

## FINDINGS OF FACT

Defendant and Arthur Calhoun operated a business known as the Crossroad Market Tire and Service Center in North Augusta, South Carolina. Defendant and Mr. Calhoun were partners. In December of 1988, Defendant sold the business to Plaintiff.[2] It is undisputed that Plaintiff wanted the business because Plaintiff considered it a

---

1. 11 U.S.C.A. §§ 1107 and 1108 (West 1979 & Supp.1990).

2. Mr. Calhoun was Defendant's partner when the sale closed but did not participate in the equipment lease.

good location. Plaintiff acquired the business by assuming a lease on the premises and by purchasing the inventory. Plaintiff and Defendant executed an "Equipment Lease" (the "agreement") on the business equipment dated December 1, 1988. Defendant contends that the agreement is a true lease. Plaintiff contends that it is a conditional sales agreement.

Plaintiff contends that it was purchasing a business and that the agreement was part of the sale. Plaintiff, at the time it acquired Defendant's business, was in a growth mode and was acquiring other business locations. Plaintiff's usual means of acquisition was to enter into what its former vice president described as an operating lease. Plaintiff's former vice president, who helped negotiate the sale, testified that Plaintiff considered the agreement to be a lease and not a purchase. Mr. Wall, former principal of Plaintiff, stated to Mr. Calhoun that Plaintiff did not purchase equipment but leased it. Defendant, of course, asserts that the agreement is a true lease.

The agreement contains provisions that are found both in a lease and in a conditional sales agreement. The agreement provides that the lease shall be governed by and construed according to the laws of South Carolina.

Defendant did not file a UCC–1 financing statement on the agreement. The term of the lease is eighty-four months, commencing December 1, 1988. The rent is $2,541.99 per month, payable in advance on the first day of each month. Plaintiff has the option to purchase the equipment at the end of the lease term for $10,080. The value of the equipment at the end of the term will be between $10,000 and $20,000. Plaintiff has the option to renew the agreement at the end of the term for an additional five years on the same terms and conditions. Defendant received payments of $5,083.98 from Plaintiff within ninety days of the filing of Plaintiff's Chapter 11 case. Defendant is not in the business of leasing and selling equipment.

## CONCLUSIONS OF LAW

■ The question before the Court is whether the agreement is a true lease as urged by Defendant or is a conditional sales agreement as urged by Plaintiff.

The legislative history to section 365 of the Bankruptcy Code states that whether a lease constitutes a security agreement should be determined by state law. *National Traveler, Inc. v. Paccom Leasing Corp. (In re National Traveler, Inc.)*, 110 B.R. 619, 620 (Bankr.M.D.Ga.1990).

The agreement provides that the lease shall be governed by and construed according to the laws of South Carolina. A security interest in personal property is subject to South Carolina's version of the Uniform Commercial Code. Section 36–1–201(37) of the Code of Laws of South Carolina 1976 Annotated[3] provides:

> (37) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 36–2–401) is limited in effect to a reservation of a "security interest". The term also includes any interest of a buyer of accounts or chattel paper which is subject to Chapter 9. The special property interest of a buyer of goods on identification of the goods to a contract for sale under Section 36–2–401 is not a "security interest", but a buyer may also acquire a "security interest" by complying with Chapter 9. Unless a lease or consignment is intended as security, reservation of title under a lease or consignment is not a 'security interest', but a consignment is in any event subject to the provisions on consignment sales (Section 36–2–326). Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall

---

**3.** S.C.Code Ann. § 36–1–201(37) (Law.Co-op. Supp.1989).

become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

S.C.Code Ann. § 36–1–201(37) (Law.Co-op. Supp.1989).

In *Compliance Marine, Inc. v. Campbell (In re Merritt Dredging Co., Inc.),*[4] the United States Court of Appeals for the Fourth Circuit stated:

> Whether a putative lease actually represents a security agreement depends primarily upon the intent of the parties. S.C.Code Ann. § 36–1–201(37). The intent of the parties must be measured by the application of an objective standard to the facts of each case. 1 G. Gilmore, Security Interests in Personal Property § 11.2 at 338 (1965). The parties' characterization of the charter party as a lease is not controlling, *e.g., Percival Construction Co. v. Miller & Miller Auctioneers, Inc.,* 532 F.2d 166, 171 (10th Cir.1976), and we accordingly look to "the true relationships and economic realities created by the agreement" to determine the interests conveyed by it. *Sight & Sound of Ohio, Inc. v. Wright,* 36 B.R. 885, 889 (S.D.Ohio 1983).

South Carolina's Commercial Code defines a "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation." S.C.Code Ann. § 36–1–201(37).

839 F.2d at 208–09.

Both Plaintiff's former vice president and Defendant testified that Plaintiff considered the agreement to be a lease and not a purchase. Plaintiff was in a growth mode and chose to enter into operating leases rather than purchase equipment. The agreement provides that at the end of the agreement term, Plaintiff could purchase the equipment for $10,080. The value of the equipment is expected to be between $10,000 and $20,000. The Court does not consider this to be nominal consideration.

The Court is persuaded that the agreement is a true lease and not a conditional sales agreement.

Defendant did not file a UCC–1 financing statement on the agreement. Plaintiff contends that it has a superior interest in the equipment under section 544(a) of the Bankruptcy Code.[5] In *In re Ken Johnson Toyota, Ltd.,*[6] the court held that failure to file a UCC–1 financing statement on a true lease under South Carolina law gives the bankruptcy trustee superior rights to the property under section 544(a). While this was a correct statement of law at the time *Ken Johnson Toyota, Ltd.* was decided, the South Carolina legislature changed this law effective January 1, 1989, when the legislature repealed the South Carolina bailment statute.[7] Plaintiff's bankruptcy petition was filed after the re-

---

**4.** 839 F.2d 203 (4th Cir.), *cert. denied,* 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988).

**5.** 11 U.S.C.A. § 544(a) (West Supp.1990). This section provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
> 11 U.S.C.A. § 544(a) (West Supp.1990).

**6.** 35 B.R. 18 (Bankr.D.S.C.1983).

**7.** S.C.Code Ann. § 27–23–80 (Law.Co-op.1976) (repealed by 1988 S.C. Acts No. 494, § 9(A) effective Jan. 1, 1989).

peal of the bailment statute. The Court, therefore, holds that Plaintiff does not have superior rights in the equipment under section 544(a).

 Plaintiff contends that $5,083.98 in payments made to Defendant are preferential and are recoverable under section 547(b) of the Bankruptcy Code.[8] Plaintiff has the burden of proving the elements of a preferential transfer. 11 U.S.C.A. § 547(g) (West Supp.1990). Plaintiff is presumed to have been insolvent on and during the ninety days immediately preceding the filing of the bankruptcy petition. 11 U.S.C.A. § 547(f) (West 1979). Defendant does not dispute Plaintiff's insolvency. The parties stipulate that the payments were made within ninety days of the filing of the bankruptcy petition.

The Court notes that the payment amount at issue is exactly two months rent on the equipment. The agreement provides that rent shall be paid in advance on the first day of each month. Plaintiff has not shown the Court that the payments were for past due rent. The Court is persuaded that the payments were for current rent and not for an antecedent debt. *See Sapir v. Eli Haddad Corp. (In re Coco),* 67 B.R. 365, 370 (Bankr.S.D.N.Y.1986) (cur-

rent rent payments rest upon current consideration and do not constitute preferences at least when the payments are timely made). The Court finds that the payments to Defendant were not preferential.

An order in accordance with this memorandum opinion will be entered this date.

SO ORDERED.

### ORDER

In accordance with the memorandum opinion published this date; it is

ORDERED that the "Equipment Lease" executed by Wall Tire Distributors, Inc., Plaintiff, and Donald Wright, Defendant, on the 1st day of December, 1988, is hereby determined to be a true lease; and it is further

ORDERED that the relief sought by Plaintiff in this adversary proceeding is hereby denied.

SO ORDERED.

---

**8.** 11 U.S.C.A. § 547(b) (West 1979 & Supp.1990). This provision provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 1979 & Supp.1990).