In re A.P. JOHNSON and R.N. Johnson, Debtors.

A.P. JOHNSON and R.N. Johnson, Appellants,

v.

Harold S. TAXEL, Chapter 7 Trustee, Appellee.

BAP No. SC–93–2212–HJR. Bankruptcy No. 93–04467–B7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 18, 1995.

Decided Feb. 27, 1995.

Charles A. Bird, San Diego, CA, for appellants.

Kevin J. Hoyt, San Diego, CA, for appellee.

Before HAGAN, JONES and RUSSELL, Bankruptcy Judges.

## OPINION

ALFRED C. HAGAN, Bankruptcy Judge:

Chapter 7 debtors, Alan P. Johnson and R.N. Johnson (the "Debtors"), filed a motion seeking an order to the effect that certain payments due post-petition under an anti-competition covenant are not property of the bankruptcy estate. The bankruptcy court held the payments were property of the estate. The Debtors appeal.

### Factual Background

Alan P. Johnson ("Johnson"), an ex-race car driver, was the sole shareholder of Alan Johnson Inc., a California corporation ("Johnson Corp"). Johnson Corp. held a franchise agreement with Porsche Cars North America, Inc. The dealership was located in San Diego, California.

On or about September 5, 1990, Johnson, Johnson Corp., Pioneer Centers of San Diego, Inc., a California corporation ("Pioneer Centers"), and Matthew J. Brewer ("Brewer"),[1] entered into an "Agreement For Sale of Automobile Dealership Assets Together With Goodwill" (the "Agreement") whereby Pioneer Centers purchased the dealership from Johnson Corp.

The Agreement provided that as part of the sale of the dealership's good will, Johnson Corp. would not compete with Pioneer Centers. In addition the Agreement included Johnson's separate covenant not to compete with Pioneer Centers for a period of five years within a sixty mile radius of the dealership. Specifically Johnson agreed not to sell Porsches or to own an interest in or work for an entity which sells Porsches.

As consideration for Johnson's individual covenant not to. compete, Pioneer Centers and Brewer agreed to pay Johnson $630,000 payable at the rate of $10,500.00 per month for a period of sixty (60) months. Payment may be accelerated upon: (1) any two successive late monthly payments; (2) the sale of more than 40% of Pioneer Center's stock or more than 50% of its assets; or (3) Brewer's death. Brewer and Pioneer Centers are required to make the payments even if Johnson dies before the payments are complete. Pioneer Centers and Brewer have the right to offset damages arising out of Johnson Corp.'s performance under the Agreement against the payments to Johnson.

The Agreement also provides that if Johnson breaches the covenant not to compete, Pioneer Centers and Brewer can offset their damages against the monthly payments and that Pioneer Centers and Brewer are entitled to specific performance and injunctive relief.

On April 28, 1993, the Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code. Harold S. Taxel (the "Trustee") was duly appointed Chapter 7 trustee.

On July 23, 1993, the Debtors filed a motion for an order determining that the post-

---

**1.** Brewer was the sole shareholder of Pioneer Centers.

petition payments due under the Agreement are "earnings from services performed by an individual" and are therefore not property of the estate. *See* 11 U.S.C. § 541(a)(6). At the time Johnson filed his motion, he was in compliance with the Agreement and Pioneer Centers was current on its payments. Johnson was then earning about $2,500.00 a month as a consultant. He contended the additional $10,500.00 per month in anti-competition payments was necessary for the support of his family.

The bankruptcy court held the payments were property of the estate.

### Jurisdiction

Pursuant to 28 U.S.C. § 158(b)(1), the bankruptcy appellate panel has jurisdiction to hear appeals from final orders of the bankruptcy courts. *See Strowski v. Von Wittenburg (In re Strowski)*, 96 B.R. 1007, 1008 (9th Cir. BAP 1989). The bankruptcy court has issued a final order determining that the payments are property of the estate. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (E) and (O). Accordingly, we have jurisdiction.

### Standard of Review

 A bankruptcy court's findings of fact must be upheld by the reviewing court unless they are clearly erroneous. *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1377 (9th Cir. 1985); Fed.R.Bankr.P. 8013. A bankruptcy court's conclusions of law are subject to *de novo* review. *In re Pizza of Hawaii*, 761 F.2d at 1377. If the bankruptcy court does not specifically address issues of law necessary to an order, implicit conclusions of law are likewise entitled to *de novo* review. *In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1333 (9th Cir.1985).

### Discussion

11 U.S.C. § 541 provides in relevant part: (a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

. . . .

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

11 U.S.C. § 541(a)(6).

In construing section 541(a)(6) the Ninth Circuit Court of Appeals stated:

Section 541(6) of the Code includes in the bankruptcy estate after-acquired property consisting of "[p]roceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. 541(a)(6). . . . Under the [Bankruptcy] Act, the test was whether the after-acquired property was "sufficiently rooted in the prebankruptcy past and so little entangled in the debtor's ability to make a fresh start that it should not be excluded from property of the estate." *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966).[2] The Code follows *Segal* insofar as it includes after-acquired-property "sufficiently rooted in the prebankruptcy past" but eliminates the requirement that it not be entangled with the debtor's ability to make a fresh start. *See* S.Rep. No. 989, *supra* at 82, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5868.

*Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1425–26 (9th Cir.1984).

The circuit court then noted that even though after-acquired property is sufficiently rooted in the pre-bankruptcy past to be property of the estate, it may still be subject to the "earning[s] from personal services performed by an individual post-petition" exception to section 541(a)(6). *In re Ryerson*, 739 F.2d at 1426.

---

**2.** In *Segal v. Rochelle* (interpreting § 70a(5) of the Bankruptcy Act), the debtor claimed certain tax refunds were not property of the estate. The Supreme Court held a tax refund is property of the estate if "it is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5)." *Segal*, 382 U.S. at 380, 86 S.Ct. at 515.

■ Applying the *Segal* test to the present case it is clear the anti-competition payments are sufficiently rooted in the pre-bankruptcy past to be included in the estate. The Agreement was entered into pre-petition. The anti-competition payments are a method of paying for the value of Johnson's name, and for insuring that Pioneer Centers will receive all of the good will previously owned by Johnson Corp. The good will and the value of Johnson's name in the Porsche business were established pre-petition. Thus, the payments are sufficiently rooted in the pre-bankruptcy past to make them property of the estate.

■ According to *Ryerson*, the next step is to exempt any portion of the anti-competition payments which are "earnings from services performed by an individual" post-petition. The Court of Appeals for the Ninth Circuit has not yet considered whether compliance with a anti-competition agreement is "services performed by an individual."

The Debtors cite *In re Hammond*, 35 B.R. 219 (Bankr.W.D.Okla.1983) for the proposition that if the payments are conditioned upon the Debtors' performance, the anti-competition payments are not property of the estate. The *Hammond* court held:

> Hammond need do no more than not compete with PQ in order that he may receive a substantial sum of money. The question becomes, is this "services performed" as envisioned by the drafters of the Bankruptcy Code? The "crucial analytical key" is not to be found "[i]n an abstract articulation of the statute's purpose, but in an analysis of the nature of the asset involved in light of those principles." *Kokoszka v. Belford*, ... 417 U.S. [642,] at 646, 94 S.Ct. [2431,] at 2434[, 41 L.Ed.2d 374 (1974)].

> In our opinion, Hammond has not done all the acts necessary to accrue his right to the future payments.... Hammond must abide by the agreement. We cannot force Hammond to comply. "The bankrupt ... cannot be compelled to perform work or services for the benefit of his creditors or his trustee in bankruptcy." 3 *Remington on Bankruptcy* § 1228.25 (1941). It is a foil which trusts both ways. Hammond is therefore performing a service which is not "sufficiently rooted" in the bankruptcy past so as to render the payments property of the estate.

*In re Hammond*, 35 B.R. at 223.[3]

We reject the *In re Hammond* test.

The interpretation of a statutory provision must begin with the plain meaning of its language. *Pennsylvania Public Welfare Dept. v. Davenport*, 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). Where statutory language is unambiguous the judicial inquiry is complete. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 252–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).... When the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language. *United States v. Ron Pair Enterp., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1988).

*Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner Mall Partnership)*, 2 F.3d 899, 908 (9th Cir.1993), *subsequent appeal dismissed as moot*, — U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). The clause "services performed by an individual" plainly does not include services not performed. Two other bankruptcy courts have reached this conclusion. In *In re Prince*, 127 B.R. 187, 191–92 (N.D.Ill.1991),

---

3. Although *In re Hammond* has been cited by other courts, no other court has concluded that post-petition anti-competition payments are property of the debtor. *In re Hammond* was initially adopted by the court in *In re Hofstee*, but was ultimately distinguished by the court in an addendum to the opinion. *Id.*, 88 B.R. 308 (Bankr.E.D.Wash.1988), *aff'd as amended without opinion*, 116 B.R. 872 (9th Cir. BAP 1990). In *Andrews v. Hall (In re Andrews)*, 153 B.R. 159, 163–64, 163 n. 4 (Bankr.E.D.Va.1993), the debtor entered into a covenant not to compete inci-

dent to the sale of a business. The buyer did not have the right to the terminate anti-competition payments in the event of breach. The buyer did, however, have the right to offset damages. The court applied the *In re Hammond* test and held the non-competition payments were property of the estate because they were not forfeitable in the event of a breach. See also *In re Bluman*, 125 B.R. 359, 367 (Bankr.E.D.N.Y.1991) (the court distinguished *In re Hammond* on the grounds the anti-competition payments were not forfeitable upon the debtors' non-compliance).

the court held that where a doctor sold his incorporated practice, payments for his personal agreement not to compete were property of the estate because the payments were for not performing services rather for the performance of services. Similarly, in *In re Weyland,* 63 B.R. 854 (Bankr.E.D.Wis.1986), the court held payments for compliance with a U.S. Dairy Termination program requirement that the debtors not own dairy cattle were not earnings from services performed because the payments were for services *not* performed.

■ Despite the fact Johnson need not do anything to comply with the covenant not to compete, Johnson contends his compliance must be personal services because it can be performed only by him. This argument sounds convincing until one realizes that Johnson can comply with the covenant even when dead. The term "personal services" does not encompass covenants which can be performed by the dead. We conclude that compliance with a anti-competition agreement is not "services performed" because refraining from the performance of services is not the performance of services.

The *In re McDaniel* court reached the same result for slightly different reasons. *See In re McDaniel,* 141 B.R. 438, 440 (Bankr.N.D.Fla.1992). McDaniel was a shareholder in an accountants' professional organization. Pursuant to the firm's employment agreement, if any shareholder left the firm the remaining shareholders would purchase his shares for book value plus a percentage of the firm's gross fees for the twelve months immediately proceeding his departure. The profit sharing payments were to be made over a twelve month period. The agreement contained an anti-competition clause which provided that the departing shareholder would forfeit his right to payment of the profit sharing clause if he performed services for any of the firm's clients. *In re McDaniel,* 141 B.R. at 438–39. The court concluded:

> The true nature of the transaction under the "employment agreement" is not to perform a service for the firm, rather to sell the Debtor's shares to the remaining shareholder's. It is clear that had debtor

sold his shares to the firm and received immediate payment, the payment would have been part of the estate. If we were to hold that these payments were not part of the estate, we would have a situation where debtor can create an interest in property of the estate by merely delaying payment for the asset sold. It is a well accepted principle that "postponed enjoyment does not disqualify an interest as 'property'." *Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). The payments received under the agreement are "sufficiently rooted in the pre-bankruptcy past and so little entangled in the debtor's ability to made a fresh start that [they] should not be excluded from the estate." *Id.*

> This section was intended to give a debtor the ability to make a fresh start, not shield his pre-bankruptcy assets from his creditors.

*In re McDaniel,* 141 B.R. at 440.

An examination of the Agreement at issue here reveals that like the covenant in McDonald's employment agreement, Johnson's covenant not to compete was part and parcel of the sale of a business. The fact the anti-competition payments must be paid even in the event of Johnson's death indicates it is Johnson's good will and not his services that are being sold. Johnson acquired and sold the good will associated with his name prepetition. That payment for the good will was delayed does not convert the sale of good will to a sale of services.

Despite the fact Johnson does not actually have to do anything to comply with the covenant not to compete, Johnson further contends the bankruptcy court should have held an evidentiary hearing before holding that the payments were not for "services performed by an individual." Johnson contends the court erred in determining the covenant not to compete was for the sale of Johnson's good will since according to the Agreement all of the good will belonged to Johnson Corp.

■ However, Johnson filed the motion for determination of the status of the payments. Therefore, Johnson had the burden

of proof. Johnson did not request an evidentiary hearing. Nor did Johnson proffer any additional evidence to the bankruptcy court.[4]

Further, although the bankruptcy court found the covenant not to compete was in fact a sale of good will, the bankruptcy court did not rely on that finding. Instead, the bankruptcy court held as a matter of law that income derived from not doing something is not income from personal services.[5] We agree with the bankruptcy court that not doing something, i.e. not competing is not the performance of services within the meaning of section 541(a)(6). Accordingly the bankruptcy judge's determination that Johnson's covenant not to compete was part of the sale of the business was not error.

Next, Johnson contends requiring him to comply with the anti-competition covenant would unfairly require him to work for the estate and would further deprive him of the most valuable "job" he can perform. However, compliance with the covenant not to compete is not work in any ordinary sense. Nor does the covenant prohibit Johnson from working. According to his own affidavit, Johnson is currently working as a consultant and earning over $2,000.00 per month. Further, Johnson is not prohibited from competing outside of the sixty mile radius imposed by non-competition agreement. Nor is the Debtor prohibited from selling cars other than Porsches. Johnson has merely sold the sales value of his name in a particular market. Honoring the sale is not work. Nor does it unfairly enrich the estate as Johnson's name recognition was acquired and sold pre-petition.

In the alternative, Johnson contends that even if the payments are not "earnings from personal services performed by an individual" post-petition, a holding that the payments are property of the estate is impractical because the bankruptcy court could not force him to comply with the agreement.[6] However, in the event Johnson

---

**4.** In addition to the documents presented to the bankruptcy judge, Johnson has requested that we take judicial notice of one magazine article and two newspaper articles about Johnson and Johnson's article entitled "Driving in Competition." Johnson contends that these documents establish "Johnson has a substantial presence and competitive capacity in the market in which he agreed not to compete." However, while Johnson's competitive capacity in the market would be relevant to the value of his covenant not to compete, it is not relevant to whether the covenant is essentially the sale of good will or essentially the sale of services.

Nor could this panel take judicial notice of Johnson's competitive capacity. Fed.R.Evid. 201(b) provides "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Johnson's presence in the market is neither generally known nor easily determined.

**5.** At page 24 lines 11–24 of the transcript the bankruptcy court explained:

... BUT EVEN IF THIS WERE, IN FACT, AN AGREEMENT WHICH PROVIDES ALONG THE LINES AS MR. MINEO AND MR. DWYER HAVE ARGUED; THAT IS, A PERIODIC PAYMENT TO MR. JOHNSON FOR HIS NON–COMPETITION, I AM PERSUADED BY THE FEW CASES THAT ARE IN THIS AREA THAT THAT IS NOT THE KIND OF PERSONAL SERVICE EARNINGS THAT 541(a)(6) IN-TENDED TO EXEMPT FOR PROPERTY OF THE ESTATE.

THAT KIND OF PASSIVE INCOME; THAT KIND OF INCOME FROM NOT DOING SOMETHING, IN THIS COURT'S VIEW IS NOT THAT KIND OF AN INCOME. ACCORDINGLY, THE DEBTORS' MOTION FOR AN ORDER DETERMINING STATUS OF POST–PETITION PAYMENTS IS DENIED TO THE EXTENT THAT IT SEEKS A DETERMINATION THAT THEY ARE NOT PROPERTY OF THE ESTATE. IT'S THIS COURT'S VIEW THAT THEY ARE PROPERTY OF THE ESTATE UNDER 541.

Transcript of Proceedings before Judge Peter W. Bowie, San Diego, California, August 23, 1993.

**6.** Johnson also contends the Agreement is an executory contract which was automatically rejected by the trustee pursuant to section 365(d)(1). This issue was not raised before the bankruptcy court. "Generally, an appellate court will not consider arguments not first raised before the district court unless there were exceptional circumstances." *Briggs v. Kent (In re Professional Inv. Properties of America)*, 955 F.2d 623, 625 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992). There are no such exceptional circumstances here. Accordingly, we will not consider whether the Agreement was an executory contract.

However, we note that several bankruptcy courts have held that similar contracts were not executory. *See Oseen v. Walker (In re Oseen)*, 133 B.R. 527, 529 (Bankr.D.Idaho 1991), citing *In re Bluman* (a debtor's duty not to compete is not

breached the Agreement, Pioneer Centers would only be entitled to offset its actual and/or liquidated damages. In addition, Pioneer Centers could obtain an injunction for specific performance because, unlike injunctions requiring services, negative injunctions prohibiting the performance of services are not violative of the Thirteenth Amendment. *In re Bluman,* 125 B.R. at 367.[7] Therefore, there is no practical reason why the bankruptcy court could not enforce its determination that the payments are property of the estate.

We affirm the bankruptcy court's decision.

---

sufficient to make a contract executory); *In re Drake,* 136 B.R. 325 (Bankr.D.Mass.1992) (where termination agreement provided separate consideration for agreement not to compete, the debtors' continuing duty not to compete was not sufficient to make the contract executory.)

**7.** In *Bluman,* the court held that an agreement prohibiting the performance of services is en-forceable under the Thirteenth Amendment, whereas an agreement to perform services is not. Therefore, payments made pursuant to a anti-competition agreement are "not tantamount to earnings from services performed by an individual which should be excluded by the estate." *In re Bluman,* 125 B.R. at 367.