In re Stephen M. SCHNEEWEISS d/b/a Niagara Geriatric Center, Debtor.

Bankruptcy No. 96–62378.

United States Bankruptcy Court, N.D. New York.

Feb. 6, 1998.

Menter, Rudin & Trivelpiece, P.C., Syracuse, New York, Jeffrey Dove of counsel, for debtor.

L. David Zube, Binghamton, New York, for Chapter 7 Trustee.

M. Elizabeth Bradley, Johnson City, New York, for Co–Counsel to Trustee.

MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is the motion filed on December 19, 1996 by the chapter 7 trustee (the "Trustee") for turnover of certain payments received and to be received by Stephen M. Schneeweiss (the "Debtor") under a non-compete agreement, pursuant to § 542 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (the "Code"). The Debtor filed an objection to the motion on January 8, 1997 in which he asserted that such payments were not property of the estate and thus not subject to turn-

over. The hearing on the motion was adjourned from time to time pending the Trustee's efforts to sell a nursing home facility formerly operated by the Debtor, which the parties hoped could yield payment in full to all creditors, thus effectively mooting the Trustee's motion. After it became doubtful that creditors would be paid in full from such a sale, the hearing on the motion occurred on September 15, 1997 and the matter was submitted for decision that same day.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(E).

## FACTS

The Debtor was formerly the president of Cazenovia College (the "College"), located in Cazenovia, New York. On February 7, 1992, the Debtor and the College, in contemplation of the Debtor's retirement from the College, entered into a non-compete agreement (hereinafter the "Agreement"). Pursuant to the Agreement, the Debtor agreed that for a period of three years after the date of his retirement as president of the College, he would not act in any executive capacity on behalf of, or act as a consultant to, any college, university or post-secondary education institution located within a seventy-five mile radius of Cazenovia, New York. In consideration of the Debtor's agreement not to compete, the College agreed to, *inter alia*, make thirteen semiannual payments of $37,000 to the Debtor, which would increase to $40,000 if the Debtor were to remain at the College through June 30, 1995. The Debtor retired from the College in or about July 1995. It appears that in December 1995 or January 1996, the Debtor received the first two installment payments under the Agreement, totaling $80,000, from the College.

On May 17, 1996, the Debtor commenced this case under chapter 7 of the Code. The Trustee now seeks turnover of all payments received or to be received pursuant to the Agreement, on the basis that all such payments constitute property of the Debtor's estate. The Debtor objects to the Trustee's motion by arguing that the payments to be received under the Agreement are not property of the estate by virtue of Code § 541(a)(6), which excludes from the estate "... earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). Furthermore, the Debtor asserts that if he "is not to be permitted to benefit from declining positions such as those described in the contract, then he will accept such positions and earn income." *See Debtor's Objection to Motion By Trustee Seeking Turnover of Contract Proceeds, filed January 8, 1997, at ¶ 5.* As a result of that assertion, the Trustee requests that the Court order the Debtor to provide the Trustee thirty days written notice prior to performing services in contravention of the Agreement and that the Trustee be allowed to seek an injunction prohibiting such activity.

## DISCUSSION

In response to the Debtor's objection to his motion, the Trustee cites *Andrews v. The Riggs Nat'l Bank of Washington, D.C. (In re Andrews)*, 80 F.3d 906 (4th Cir. 1996). In *Andrews*, the debtor had executed a non-compete agreement in connection with the sale of the tangible assets of his business. *See id.* at 908. The Fourth Circuit concluded that the non-compete agreement was an integral part of the pre-petition sale of the debtor's business, and that the payments due thereunder were plainly rooted in the debtor's pre-petition activities. *See id.* at 910. Relying primarily on the Supreme Court's decision in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), which held that post-petition loss-carryback tax refunds relating to pre-petition losses were estate property because they were "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability

to make an unencumbered fresh start," the Fourth Circuit held that payments due under the non-compete agreement could not be classified as "earnings from services performed" under Code § 541(a)(6). *See id.* at 910–12.

In an attempt to distinguish *Andrews,* the Debtor here argues that the payments due under the Agreement are not rooted in his pre-petition activities, but instead are post-petition compensation "for his action of not being employed post-petition in competition with the [C]ollege." *See Debtor's Memorandum of Law in Opposition to Trustee's Motion for Turnover of Post–Petition Personal Service Payments, filed August 28, 1997 ("Debtor's Memorandum of Law"), at p. 3.* This argument presupposes that the Debtor performs services pursuant to the Agreement.

The Fourth Circuit in *Andrews,* despite its express holding, did not squarely analyze the question of whether payments due under the non-compete agreement at issue were "earnings from services performed." The court stated that the ordinary meaning of the phrase "earnings from services performed" "simply does not answer decisively whether the phrase encompasses refraining from competing pursuant to a noncompetition agreement." *See In re Andrews,* 80 F.3d at 909. Thus, the *Andrews* court appears to have concluded that the payments in question, even if "earnings from services performed," were not earned "after the commencement of the case," and therefore were not excluded from the estate. *See id.* at 910–12. *Accord United States v. Jones (In re Jones),* 181 B.R. 538, 541–43 (D.Kan.1995).

Other courts have concluded that the plain meaning of the phrase "earnings from services performed" does not include payments to be received pursuant to a non-compete agreement. In *Johnson v. Taxel (In re Johnson),* 178 B.R. 216 (9th Cir. BAP 1995); the Ninth Circuit Bankruptcy Appellate Panel stated:

> Despite the fact [the debtor] need not do anything to comply with the covenant not to compete, Johnson contends his compliance must be personal services because it can be performed only by him. This argument sounds convincing until one realizes that Johnson can comply with the covenant even when dead. The term "personal services" does not encompass covenants which can be performed by the dead. We conclude that compliance with a anti-competition agreement is not "services performed" because refraining from the performance of services is not the performance of services.

*Id.* at 220.

Similarly, in *Unsecured Creditors Committee v. Prince (In re Prince),* 127 B.R. 187 (N.D.Ill.1991), the court stated in reference to a the debtor's covenant not to compete:

> This covenant did not contemplate "services," nor can any portion of the purchase price allocable to the covenant be considered "earnings from services." [The debtor] was not agreeing to perform services; he was agreeing *not* to perform services for a period of time in certain geographical areas ... The distinction between performing services and not performing services was recognized in the case of *In re Weyland,* 63 B.R. 854, 863 (Bankr.E.D.Wis.1986), where the court stated that it
>
> > does not read "earnings from services performed by an individual debtor after the commencement of the case" to include payments for services *not* performed by the debtor.
>
> (emphasis in original). *See also In re Chastek,* 1988 WL 105804 (Bankr. D.Minn.).

*Id.* at 192. *See also In re Leonard Bluman,* 125 B.R. 359, 367 (Bankr.E.D.N.Y. 1991) (consideration paid by purchaser of debtor's business in exchange for debtor's covenant not to compete did not constitute earnings from post-petition services).

■ This Court agrees with the foregoing authorities which have concluded that

payments received in consideration of not competing do not constitute "earnings from services performed." The Debtor here is simply not performing any services under the Agreement, and it is legal sophistry to suggest otherwise. The Agreement itself provides: "The amounts agreed to be paid herein are not to be considered compensation for services rendered contemporaneously during the payment term." *See Agreement attached as Exhibit A to Trustee's Affidavit in Support of Motion for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542, Sworn to December 19, 1996, at ¶ 3.* This indicates to the Court that, upon executing the Agreement, the Debtor obtained rights to installment payments conditioned upon future adherence to the non-compete covenant contained in the Agreement. Those rights to payment, obtained pre-petition, are property of the estate. *Cf. Banner v. Bagen (In re Bagen),* 186 B.R. 824, 829–30 (Bankr.S.D.N.Y.1995) (pre-petition contingent contract right to receive property in the future was property of the estate). As a result, the Court concludes that the payments themselves under the Agreement are "sufficiently rooted in the Debtor's pre-bankruptcy past" to constitute property of the Debtor's bankruptcy estate. *See Segal v. Rochelle,* 382 U.S. at 380, 86 S.Ct. at 515.[1]

The Debtor also contends that the Trustee, by raising the possibility that he may seek to enjoin the Debtor from breaching the Agreement, has conceded that the Agreement is an executory contract. The Debtor states: "By requesting that Schneeweiss not be permitted to accept the prohibited employment, the trustee acknowledges that Schneeweiss' unperformed obligations under the Agreement are material, and that his failure to perform such obligations would constitute a material breach entitling the college to its remedy under the contract." *See Debtor's Memorandum of Law,* at p. 4–5. The widely adopted definition of an "executory contract," formulated by Professor Countryman, is a contract " 'under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' " *In re Spectrum Information Technologies, Inc.,* 190 B.R. 741, 746–47 (Bankr.E.D.N.Y.1996) (quoting Vern Countryman, *Executory Contracts in Bankruptcy, Part I,* 57 MINN.L.REV. 439, 460 (1973)). Some courts use what is known as the "functional approach" to determine whether a contract is executory. Under the functional approach "it is necessary to work backward, proceeding from an examination of the goals rejection is expected to accomplish ... If those purposes have already been accomplished through rejection, then the contract is not executory within the meaning of the Code." *See id.* at 747 (quoting *In re Bluman,* 125 B.R. at 363) (internal quotations omitted). " 'Those purposes include: (1) taking advantage of contracts which will benefit the estate; (2) relieving the estate of burdensome contracts; (3) promoting the debtor's fresh start; (4) permitting the allowance and determination of claims; and (5) preventing parties from remaining 'in doubt concerning their status vis-a-vis the estate.' " *In re Bluman,* 125 B.R. at 363 (quoting *In re Monument Record Corp.,* 61 B.R. 866, 868 (Bankr.M.D.Tenn. 1986) (other citations omitted)).

Thus, the Debtor's argument, though not clearly articulated, appears to be two-fold: 1) the Agreement is executory, because the performance of services are owed thereunder by the Debtor and 2) because the Agreement is a personal ser-

---

1. Nor are the payments due under the Agreement "entangled with ... [the Debtor's] ability to make an unencumbered fresh start," *see id.,* 382 U.S. at 380, 86 S.Ct. at 515, because, as the bankruptcy court stated in the *Andrews* case, "[the Debtor] is free to pursue any gainful employment he wishes except in a narrow geographical area ..." *See Andrews v. Hall (In re Andrews),* 153 B.R. 159, 164 (Bankr. E.D.Va.1993).

vices contract, Code § 365(c)(1) prohibits its assumption by the Trustee, as a result of which the Agreement and the payments thereunder are either not property of estate or should be abandoned by the Trustee. But as the Fourth Circuit explained in *Andrews*, even if an agreement may be characterized as executory, "it does not thereby follow that the contract is one for the *performance of services* within the meaning of § 541(a)(6)." *In re Andrews*, 80 F.3d at 911–12. As explained above, and assuming *arguendo* that the Agreement is executory in nature, the Debtor cannot be said to be performing services under the Agreement, and Code § 365(c)(1) would therefore be inapplicable.

More importantly, however, Code § 365(c)(1) is inapplicable because the Agreement is not an executory contract. An obligation to comply with a restrictive covenant, such as a covenant not to compete, does not constitute a material obligation, and a contract under which one party must refrain from competing is therefore not executory under the Countryman definition of an executory contract. *See In re Information Technologies, Inc.*, 190 B.R. at 748–750 (citing *In re Brian Nelson Drake*, 136 B.R. 325 (Bankr. D.Mass.1992); *In re Bluman*, 125 B.R. at 359). Nor is such a contract executory under the functional approach, because creditors would not benefit from rejection by the Trustee. *See In re Bluman*, 125 B.R. at 363.

The Court therefore finds that the Agreement is not an executory contract and that all payments received or to be received by the Debtor pursuant to the Agreement cannot be classified as "earnings from services" within the meaning of Code § 541(a)(6). All such payments are property of the estate, and must be turned over to the Trustee. Based upon the foregoing, the Trustee's motion is granted and it is hereby

ORDERED that the Debtor turn over to the Trustee all payments received or to be received under the Agreement, pursuant to Code § 542; and it is further

ORDERED that the Debtor give the Trustee thirty (30) days written notice of any action which the Debtor may take which would constitute a breach of the Agreement.