**In re Orlin E. ALSTAD, Debtor.**

**No. 01–00896–3P7.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

July 31, 2001.

William B. Johnson, Jacksonville, FL, for debtor.

Gregory K. Crews, Jacksonville, FL, trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon Trustee's Motion for Turnover of Property. The Court held a hearing on May 16, 2001 and the parties were provided with the opportunity to tender briefs in support of their arguments. The parties subsequently submitted a Stipulation of Facts. Upon the parties' submissions, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Debtor was a principal in a corporation known as W.D.O. Termite and Pest Control, Inc., a Florida corporation ("W.D.O.").

2. The assets of W.D.O. were purchased by Terminix International Company, L.P., a Delaware limited partnership ("Terminix") on May 20, 1999.

3. The Asset Purchase Agreement (Debtor's Ex. 1) required Debtor to enter into a non-compete agreement (the "Non–Compete Agreement") (Tr.'s Ex. 1). The Non–Compete Agreement prohibited Debtor from competing in the termite and pest control business for a period of sixty (60) months commencing May 20, 1999. In return, Terminix agreed to pay Debtor $16,083.33, payable in sixty (60) monthly installments of $268.05.

4. On February 5, 2001, Debtor filed his Chapter 7 bankruptcy petition. Since that time, Debtor has upheld the covenants of the Non–Compete Agreement and continues to receive payments from Terminix.

5. The Chapter 7 Trustee (the "Trustee") filed a motion for turnover of funds

received by Debtor pursuant to the Non–Compete Agreement since his bankruptcy filing.

6. Debtor argues that the payments are excluded from the estate as earnings from services performed by an individual debtor after the commencement of the case as provided in 11 U.S.C. § 541(a)(6).

## CONCLUSIONS OF LAW

■ The commencement of a bankruptcy case creates an estate that is comprised of all the property in which a debtor has a legal or equitable interest as of the petition date. 11 U.S.C. § 541(a)(1) (West 2001). "Although property of the estate is broadly defined under § 541, there is a temporal limit on its inclusiveness." *In re Andrews*, 153 B.R. 159, 162 (Bankr. E.D.Va.1993). This limitation entitles the debtor to exclude earnings derived from post-petition services from property of the estate. However, the trustee is not prevented from reaching "[p]roceeds, product, offspring, rents and profits of or from property of the estate" acquired after commencement of the case. § 541(a)(6). Consequently, assets received *post-petition* as a result of *pre-petition* services may be brought into the estate under the purview of § 541(a)(6).

The question before this Court is whether the post-petition payments received by Debtor under the Non–Compete Agreement are property of the estate or excluded under the "earnings exception" of § 541(a)(6). The resolution of this issue is tied to the Court's determination of whether non-performance pursuant to a covenant not to compete qualifies as "services performed" under § 541(a)(6).

In support of his argument, Debtor contends that the payments are within the definition of "earnings from services performed by an individual debtor after the commencement of the case" because Debtor has a continuing duty to perform under the Non–Compete Agreement. Debtor characterizes his act of refraining from competition as the requisite performance mandated by § 541(a)(6). Therefore, Debtor argues, the payments should be excluded under § 541(a)(6).

■ The Court disagrees with Debtor's position for two reasons. First, the literal language of the statute only excludes "earnings from services *performed.*" "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'. . . . The plain meaning of legislation should be conclusive." *United States v. Ron Pair Enter.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation omitted). Since the literal language of the statute does not entitle Debtor to an exclusion based on services *not performed*, the Court declines to extend the meaning of the statute to encompass such an interpretation. *See In re Schneeweiss*, 233 B.R. 28 (Bankr. N.D.N.Y.1998); *Unsecured Creditors Comm. v. Prince (In re Prince)*, 127 B.R. 187 (N.D.Ill.1991); *In re Weyland*, 63 B.R. 854 (Bankr.E.D.Wis.1986).

■ Second, when post-petition payments are "sufficiently rooted in the pre-bankruptcy past," such income will pass to the estate. *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Consequently, where the "debtor essentially fulfills all his obligations prior to the filing of his petition, the post-petition commissions accruing therefrom will be deemed property of the estate." *In re Sloan*, 32 B.R. 607, 611 (Bankr.E.D.N.Y. 1983).

■ The Court is persuaded that the payments were intended to compensate Debtor for an asset that was acquired and transferred pre-petition, namely Debtor's

goodwill in his business. "That payment for the goodwill was delayed does not convert the sale of goodwill to the sale of services." *In re Johnson*, 178 B.R. 216, 220 (9th Cir. BAP 1995). The covenant not to compete is simply a mechanism by which the purchaser ensures that he receives the full benefit of his bargain. *Id.* at 219. In the case of *In re Prince*, the Seventh Circuit explained the interconnection between the sale of goodwill and covenants not to compete:

> Given that after this transfer [Debtor] could theoretically open up shop across the street, reclaim his [clients], and ... leave [the purchaser] with only nominal value in the [company], the covenant not to compete was intended to ensure that [Debtor's] transfer of his goodwill to [the purchaser] would not be illusory. Thus, the covenant not to compete and [Debtor's] best efforts did not represent the transfer of additional value to [Debtor] over and above the value of the [company] to [the purchaser]. Rather, they were used ... merely to ensure that after the sale, the [company] would be as valuable in [the purchaser's] hands as it had been in [Debtor's].

*In re Prince*, 85 F.3d 314, 321–22 (7th Cir.1996).

The Non–Compete Agreement is therefore inextricably tied to the sale of a substantial pre-petition asset. Clearly if the goodwill did not exist, the covenant not to compete would be unnecessary. Thus, the payments due under the Non–Compete Agreement are "sufficiently rooted in the pre-bankruptcy past" to constitute property of the estate. *Andrews*, 153 B.R. at 164 (citing *Segal*, 382 U.S. at 380, 86 S.Ct. 511).

Debtor also argues that the Court cannot compel compliance with the Non–Compete Agreement because the contract substantially interferes with Debtor's right to work. In the case of *In re Hammond*, 35 B.R. 219 (Bankr.W.D.Okla.1983), the debtor sold his stock and concurrently entered into a non-compete agreement with the purchaser. The *Hammond* court found that future payments due under the non-compete agreement were not property of the estate because payment was contingent upon the debtor's compliance with the non-compete clause. In so holding, the court stated: "If an entity ... is to receive the payments in question, Hammond must abide by the agreement. We cannot force Hammond to comply. The bankrupt ... cannot be compelled to perform work or services for the benefit of his creditors or his trustee in bankruptcy." *Hammond*, 35 B.R. at 223.

Most courts have rejected the rationale of *Hammond* and have held that payments pursuant to a covenant not to compete are property of the estate. *See In re Jones*, 181 B.R. 538 (D.Kan.1995); *Johnson*, 178 B.R. at 216; *In re McDaniel*, 141 B.R. 438 (Bankr.N.D.Fla.1992); *Prince*, 127 B.R. at 187; *In re Bluman*, 125 B.R. 359 (Bankr. E.D.N.Y.1991). The Court is persuaded by the reasoning of these courts and accordingly declines to follow the *Hammond* case. Although a court may not demand specific performance where a personal service is concerned, a covenant not to compete may be enforced. A court may issue a negative injunction prohibiting a person from engaging in activity that violates a non-compete agreement if it is found that the legal remedy is inadequate. Such negative injunctions do not run afoul of the Thirteenth Amendment's protection against involuntary servitude. *Bluman*, 125 B.R. at 367.

Furthermore, the Court does not consider the Non–Compete Agreement in this case to be an inequitable infringement upon Debtor's right to work. Covenants not to compete are honored in Tennessee if

they are reasonable.[1] *Int'l Mktg. Group v. Speegle*, No. M1999–00468–COA–R3–CV, 2000 WL 329375, at *7 (Tenn.Ct.App. Mar.30, 2000) (citing *Cent. Adjustment Bureau v. Ingram*, 678 S.W.2d 28, 32 (Tenn.1984)). The following three factors are considered in determining whether non-compete covenants are reasonable: (1) whether sufficient consideration exists for the covenant, (2) whether the covenant is reasonable both in terms of the time period involved and geographic limitation, and (3) the hardship on the parties. *Id.* The Non–Compete Agreement prohibits Debtor from engaging in the termite and pest control business for a period of five years in the four counties surrounding the business. In consideration, Debtor will be paid approximately $270 per month for five years. The Court finds that the covenant is supported by adequate consideration. The Non–Compete Agreement is also reasonably limited in time and geographical restrictions. Five-year restrictions have been previously upheld in Tennessee. *See e.g., Ramsey v. Mut. Supply Co.*, 58 Tenn. App. 164, 427 S.W.2d 849 (1968). Additionally, the territorial restriction is valid since it covers an area where Terminix intends to establish its business. Finally, there is no evidence demonstrating that the Non–Compete Agreement creates an unjustifiable burden on Debtor. Accordingly, the Court finds that the Non–Compete Agreement is narrowly tailored to meet all three requirements and does not unreasonably curtail Debtor's right to work.

## CONCLUSION

The Court concludes that the payments due to Debtor under the Non–Compete Agreement do not fall within the definition of "earnings from services performed by an individual debtor after the commencement of the case" as provided in 11 U.S.C. § 541(a)(6). Accordingly, any payments received by Debtor pursuant to the Non–Compete Agreement after the petition date shall become property of the estate. A separate order will be entered in accordance with these Findings of Fact and Conclusions of Law.

---

1. The choice of law provision in the Non–Compete Agreement states: "This Agreement shall be deemed to be a contract made under the laws of the State of Tennessee and shall be construed in accordance with the laws of said State." (Tr.'s Ex. 1 ¶ 6(iii).)